## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ADAMS RESOURCES EXPLORATION | ) | Case No. 17-10866 (KG) |
| CORPORATION,[1] | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING AND APPROVING EMERGENCY POST-PETITION FINANCING; (II) GRANTING LIENS; AND (III) PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS

Adams Resources Exploration Corporation (the "Debtor"), as debtor and debtor in possession in the above-captioned case, hereby files its Motion For Interim And Final Orders (i) Authorizing And Approving Emergency Post-Petition Financing; (II) Granting Liens; and (iii) Providing Superpriority Administrative Expense Status (the "Motion"). In support of this Motion, the Debtor has filed the Declaration of Josh C. Riney in Support of Chapter 11 Petition and First Day Pleadings (the "Riney Declaration"). In further support hereof, the Debtor respectfully states:

## I.
## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of Debtor's federal tax identification number, is Adams Resources Exploration Corp. (9131). The location of the Debtor's corporate headquarters and service address is: 17 S. Briar Hollow Lane, Suite 100 Houston, TX 77027.

2.      Venue of this case and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 364 and 105, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.
## BACKGROUND

4.      On April 21, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned chapter 11 case.  The factual background regarding the Debtor, including its business operations, capital and debt structure, and the events leading to the filing of this bankruptcy case, is set forth in detail in the Riney Declaration, filed concurrently herewith and fully incorporated by reference.[2]

5.      The Debtor has continued in possession of its property and has continued to operate and maintain its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No trustee or examiner has been appointed in this chapter 11 case, and no committees have yet been appointed or designated.

## III.
## RELIEF REQUESTED

7.      In this Motion, the Debtor requests authority to enter into a debtor in possession loan (the "DIP Loan") for purposes of funding operating expenses and other post-petition costs of

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Riney Declaration.

the Debtor.  The lender under the DIP Loan is Adams Resources & Energy Inc., the corporate

parent and sole shareholder of the Debtor ("DIP Lender").  The Debtor requests entry of an interim

order granting authority to enter into the DIP Loan on an interim basis, and the scheduling of a

final hearing within approximately 30 days to consider approval on a final basis.

8.      As set forth in the Riney Declaration, the Debtor requires immediate access to

postpetition financing to ensure that it is able to continue the operation of its business.  Absent

authority to enter into the DIP Loan, the Debtor, its creditors and the estate generally would suffer

irreparable harm because the Debtor would not be able to continue operations, which, in turn,

would cause an immediate and pronounced deterioration in the value of the Debtor's business.

Thus, the Debtor's access to the DIP Loan is absolutely necessary to preserve and maximize value

for the benefit of all of the Debtor's stakeholders.

9.      The Debtor submits that the terms of the DIP Loan are reasonable and better than

what can otherwise be obtained in the marketplace.

## IV.
## CONCISE STATEMENT OF THE MATERIAL TERMS OF
## THE PROPOSED DIP LOAN

10.      The following chart contains a summary of the material terms of the proposed DIP

Loan, in accordance with Bankruptcy Rule 4001(b)(1) and Local Bankruptcy Rule 4001-2(a)(ii):[3]

---

[3] This summary is qualified in its entirety by reference to the provisions of the Interim Order. The
proposed Interim Order will control in the event of any inconsistency between this Motion and the
proposed Interim Order.

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **DIP Loan Parties**<br><br>*Bankruptcy Rule 4001(c)(1)(B)* | Borrower: Adams Resources Exploration Corporation<br><br>Lender: Adams Resources & Energy, Inc. | Interim Order Introduction |
| **Amount of Borrowing**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br>*Local Bankruptcy Rule 4001-2(a)(ii)* | An amount not to exceed $580,000 on an interim DIP loan, and on a final basis, an amount not to exceed $1,250,000 | Interim Order, ¶ 2 |
| **Purpose / Use of Funds**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii)*<br>*Local Bankruptcy Rule 4001-2(a)(ii)* | The Debtors seek authority to use the proceeds of the DIP Loan for, among other things, (i) working capital requirements; (ii) general corporate purposes; and (iii) the costs and expenses of administering the chapter 11 cases, in each case pursuant to and in accordance with the 13-week cash collateral budget attached as Exhibit 1 to the Interim Order (as the same may be updated in accordance with the terms of the Interim Order, the "Budget"). | Interim Order, ¶ 2 |
| **Interest Rate**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br>*Local Bankruptcy Rule 4001-2(a)(ii)* | Drawn Amounts: LIBOR + 200 bps per annum<br><br>Default Interest: The per annum interest rate equal to the sum of the interest rate otherwise applicable, plus 2% per annum. | Interim Order, ¶ 3 |
| **Fees**<br><br>*Bankruptcy Rule 4001(c)(1)(B)* | Commitment Fee: None<br><br>Administrative Fees: Reimbursement of reasonable fees and expenses of the DIP Lender including, without limitation, of its counsel. | Interim Order, ¶ 3 |
| **Maturity Date**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(ii)* | Earlier of (a) 12 months after the Petition Date, (b) the closing on a sale of substantially all of the Debtor' assets, (c) the effective date of a chapter 11 plan of reorganization of any of the Debtors, and (d) the date that the DIP Loan is accelerated, whether at stated maturity, upon the occurrence of an Event of Default or otherwise. | Interim Order, ¶ 3 |
| **Optional Prepayment** | Borrower may voluntarily prepay the principal of the Loans, in whole or in part, without premium or penalty, at any time. | |
| **Mandatory Prepayment** | Asset Sales: 100% of net cash proceeds of sales or disposition of any property or assets.<br><br>Insurance Proceeds: 100% of net cash proceeds of insurance paid on account of any loss of any property or assets or in respect of any business interruption of the Debtors. | |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **Events of Default**<br><br>*Fed. R. Bankr. P. 4001(b)(1)(B) and (c)(1)(B)(iii); Local Rule 4001-2(a)(ii)* | Standard and customary events of default for financings of this type, including, without limitation:<br>• non-payment of principal, interest and fees;<br>• breaches of representations and warranties;<br>• defaults under affirmative and negative covenants;<br>• defaults with respect to post-petition debt or any take-or-pay contract entered into post-petition;<br>• termination, revocation or invalidity of any DIP Loan or guaranty thereunder;<br>• unstayed judgments in excess of specified amounts;<br>• impairment of security interests in the DIP Collateral;<br>• a Debtor's application or the entry of an order, in either case without the prior written consent of the DIP Lender, for the appointment of a trustee or examiner with enlarged powers under the Bankruptcy Code;<br>• entry of an order dismissing a Case or converting a Case to a case under Chapter 7 of the Bankruptcy Code;<br>• violation of any Debtor of any provisions of the DIP Orders if such violation is adverse to the Lender;<br>• failure of Debtor to meet certain agreed upon Milestones relating to progress of these chapter 11 cases as to asset sales and/or a plan of reorganization;<br>• the Final Order shall not have been entered by the Court within 35 days from the entry of the Interim Order. | Interim Order, ¶ 18 |
| **Priority of DIP Liens and Effect on Existing Liens**<br><br>*Fed. R. Bankr. P. 4001(b)(1)(B)(i), (ii) and (c)(1)(B)(i); Local Rule 4001-2(a)(i)* | The DIP Lender shall be granted security interests and liens, pursuant to sections 364(c)(2) and, to the extent such liens exist, 364(c)(3) of the Bankruptcy Code, payable from, and having recourse to, all of the pre- and post-property of the Debtor and its estate and all proceeds thereof, but excluding, any Avoidance Actions and Avoidance Proceeds (each as defined in the DIP Orders)), subject only to the Carve-Out. | Interim Order, ¶ 10 |
| **Superpriority Claims** | Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Obligations shall at all times constitute allowed senior administrative expense claims against the Debtor with priority over any and all other administrative expenses, including, without limitation, the kinds specified in sections 105, 326, 328, 330, 331, 503(b), 506(c) (with any claims arising under section 506(c) only subject to the entry of the Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code or otherwise, which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and its estate and all proceeds thereof, except for Avoidance Actions and Avoidance Proceeds (each as defined in the DIP Orders), subject only to the Carve-Out. | Interim Order, ¶ 12 |
| **Covenants**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)* | Affirmative, negative and financial covenants that are customary and appropriate for financings of this kind. | |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **Budget**<br>*Bankruptcy Rule 4001(b)(1)(B)(ii)* | The Budget is defined above and attached as Exhibit 1 to the Interim Order.<br><br>No less frequently than every four weeks commencing on May 15, 2017, the Debtors shall file an updated Budget for the following 13-week period (each, a "Proposed Budget"). | Interim Order, ¶ 2 |
| **Liens on Chapter 5 Actions**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(D)* | The Lender shall have a lien on causes of action under Section 549 of the Bankruptcy Code. | Interim Order, ¶ 10 |
| **Milestones**<br><br>*Fed. R. Bankr. P. 4001(b)(1)(B)(vi) and (c)(1)(B)* | Within the time periods set forth below, the Debtor shall perform each action with respect to the Case including, without limitation, the Milestones set forth below, subject to waiver by consent of the DIP Lender:<br>• As soon as practicable, but in any event within the 30 days immediately following the Petition Date, either (i) executing a sale agreement with a stalking   horse bidder relating to the sale of, or substantially  all of Debtor's assets, and filing a sale motion and  bidding procedures motion relating to such sale   with the Bankruptcy Court, or (ii) filing a bidding  procedures motion and an auction sale motion with  the Bankruptcy Court to implement bidding   procedures for a sale of substantially all of Debtor's assets without a stalking horse bidder;<br>• Within 60 days of the Petition Date, obtain entry of  an order approving bidding procedures for a sale of   substantially all of the Debtor's assets;<br>• Within 90 days of the Petition Date, identify a winning bidder or other purchaser for all or substantially all of the Debtor's assets;<br>• Within 120 days of the Petition Date, obtain Bankruptcy Court approval of and close a sale of substantially all of the Debtor's assets. | Interim Order, ¶ 14 |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **Carve-Out**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(F)* | Carve-Out. For purposes of the Interim Order, the "Carve-Out" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) all allowed and unpaid professionals fees, expenses and disbursements incurred prior to the Termination Date (whenever allowed) by (x) professionals of the estates retained by order of the Court ("Estate Professionals") up to the amount provided for such Estate Professionals in the Budget and (y) professionals of a Creditors Committee retained by order of the Court ("Creditors Committee Professionals" and, together with the Estate Professionals, the "Case Professionals"), if any, up to the amount provided for such Creditors Committee Professionals for such period in the Budget (this clause (ii) being referred to as the "Pre-Termination Date Carve-Out"); and (iii) the allowed and unpaid professional fees, expenses and disbursements under section 327 or 1103(a) of the Bankruptcy Code incurred on or after the Termination Date, in the aggregate not to exceed $75,000 for Estate Professionals and $30,000 for Creditors Committee Professionals (this clause (iii) being referred to as the "Post-Termination Date Carve-Out"). | Interim Order, ¶ 24 |
| **Cross-Collateralization**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(A)* | None. | |
| **Findings re Validity/ Perfection/Amount**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | Not applicable. | |
| **Challenge Period**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | Not applicable. | |
| **506(c) Waiver**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(C)* | Upon entry of a final order. | Interim Order, ¶ 23 |
| **552(b) Waiver**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(H)* | Upon entry of a final order. | Interim Order, ¶ 23 |
| **Releases**<br><br>*Local Bankruptcy Rule 4001-2(a)(ii)* | None. | |

| Material Terms | Summary of Material Terms | Para(s). of Interim Order |
|---|---|---|
| **Provisions Deeming Prepetition Debt to be Postpetition Debt**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(E)* | None. | |
| **Non-Consensual Priming**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | None. | |

**V.**

**HIGHLIGHTED PROVISIONS UNDER LOCAL RULE 4001-2(a)(i)**

11.     Local Bankruptcy Rule 4001-2 requires that certain provisions be highlighted and that the Debtor provide justification for the inclusion of such highlighted provisions.  The Debtor believes that the following provisions of the Interim Order are required to be identified in accordance with Local Bankruptcy Rule 4001-2 and that such provisions are justified and necessary in the context and circumstances of these cases.

    a.    **Local Rule 4001-2(a)(i)(A) — *Cross-Collateralization***. The Orders do not provide for cross-collateralization.

    b.    **Local Rule 4001-2(a)(i)(B) — *Validity, Perfection, and Amount of Prepetition Liens.*** The Orders do not contain any such provisions.

    c.    **Local Rule 4001-2(a)(i)(B)–*Committee Challenge Period.*** Not applicable.

    d.    **Local Rule 4001-2(a)(i)(C) — *506(c) Waiver***.  506(c) waiver upon entry of the Final Order.

    e.    **Local Rule 4001-2(a)(i)(D) — *Liens on Avoidance Actions***. The Lender shall have a lien on causes of action under Section 549 of the Bankruptcy Code.

    f.    **Local Rule 4001-2(a)(i)(E) — *Provisions Deeming Prepetition Debt to be Post Petition Debt***.  The Orders do not contain any such provisions.

    g.    **Local Rule 4001-2(a)(i)(F) — *Disparate Treatment of Professionals Retained by the Committee***. In compliance with Local Rule 4001-2(a)(i)(F), the Interim Order contains no provisions that provide for disparate treatment for professionals retained by the

Committee, if any, with respect to the Carve Out. The Interim Budget does include a line item for Committee professional fees. See Interim Order, Ex. 1.

h. **Local Rule 4001-2(a)(i)(G) — *Non-Consensual Priming*.** The Orders do not provide for non-consensual priming of any existing secured lien.

i. **Local Rule 4001-2(a)(i)(R) — *Provisions Affecting the Court's Power to Consider the Equities of the Case*.** The Orders do not contain any such provisions.

## VI.
## NEED FOR POST-PETITION FINANCING

12.     The preservation of value of the Debtor's business hinges upon obtaining access to post-petition financing. The Debtor uses cash on hand and cash flow from operations to satisfy payroll, pay suppliers, meet overhead, and make any other payments that are essential for the continued management, operation, and preservation of the Debtor's businesses. The ability to satisfy these expenses as and when due is essential to the Debtor's continued operation of their businesses during the pendency of these cases. Indeed, without access to post-petition financing the Debtors and their estates would suffer immediate and irreparable harm, by, among other things, being unable to pay on-going joint interest billings and other expenses associated with maintaining oil and gas revenues and preserving the value of Debtor's oil and gas interests.

13.     The Debtor intends to use the post-petition financing to, among other things, fund its operations to enable the preservation of the business and reorganization under Chapter 11. Pursuant to the Interim Order, the financing period requested is 30 days from the Petition Date.

14.     In conjunction with the Orders and this request to authorize post-petition financing, the Debtor has formulated the Budget. The Debtor believes that the Budget will provide the Debtor with adequate liquidity. The Interim Budget contains line items for each category of cash flows anticipated to be received or disbursed during the time period for which the Budget is prepared. The Debtor believes that the Budget includes all reasonable, necessary, and foreseeable expenses

to be incurred in connection with the operation of their business for the period set forth in the Budget.

15.     Pursuant to Section 364(c) of the Bankruptcy Code, the Debtor requests that the Court authorize the Interim DIP Loan to provide for emergency funds to provide for payroll, joint interest billings, and other basic operating expenses.

16.     Most critically, the next payroll is April 28, 2017.  The next joint interest billings ("JIBs") are due on April 28, 2017.  Failure to pay JIBs could result in the Debtor being deemed "non-consent" for new wells, which will decrease the value of those assets and potential revenues. Failure to pay JIBs could also subject the Debtor to setoff and recoupment rights, reducing potential revenues.  These obligations must be paid to preserve the value of the Debtor's assets.

17.     The Debtor has determined that it is unable to obtain emergency financing in another manner, or on any terms superior to those in the Interim DIP Loan.  The Debtor submits that entering into the Interim DIP Loan is necessary to fund its post-petition operating expenses and allow the Debtor to successfully reorganize.

18.     A proposed form of interim order is attached as Exhibit "B" hereto.  In addition to the foregoing terms, the proposed order includes other customary terms for DIP financing orders. The Debtor requests that the Court enter the interim order as soon as practicable to allow the Debtor access to the funds necessary to cover basic operating expenses; and that the Court schedule a final hearing on the matter with notice to creditors.

## THE DEBTOR SHOULD BE AUTHORIZED
## TO OBTAIN POST-PETITION FINANCING

19.     Authorizing the Debtor to incur post-petition indebtedness pursuant provide the Debtor with the funds necessary to maintain its operations.  Absent approval of post-petition financing, the Debtor will be forced to cease all operations.

20.    Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(l) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses, as specified in Section 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364.  The Debtor proposes to obtain the financing set forth in the DIP Credit Agreement by providing, *inter alia*, superpriority claims, security interests, and liens pursuant to Sections 364(c)(l), (2), and (3) of the Bankruptcy Code.

21.    Bankruptcy courts grant a debtor considerable deference as to post-petition financing in acting in accordance with its business judgment.  *See*, *e.g.*, *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep 7 Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Funding Sys. Asset Mgmt. Corp.*, 72 B.R. 87 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985).

22.    The Debtor's liquidity needs can be satisfied only if the Debtor is authorized to obtain financing under the DIP Credit Agreement and to use such proceeds to fund its operations. The Debtor believes that it would be unable to procure sufficient financing in the form of unsecured credit allowable under Section 503(b)(l), as an administrative expense under Section 364(a) or (b),

or in exchange for the grant of a superpriority administrative expense claim pursuant to Section 364(c)(l).  Accordingly, the Debtor submits that the circumstances of this case require the Debtor to obtain financing pursuant to Section 364(c) of the Bankruptcy Code and, accordingly, incurring post-petition debt pursuant to the DIP Credit Agreement reflects the exercise of its sound business judgment.

23.    The terms and conditions of the DIP Credit Agreement are fair and reasonable, and were negotiated extensively by well-represented, independent parties in good faith and at arms' length.  Accordingly, the Lender and all obligations incurred under the DIP Credit Agreement should be accorded the benefits of Section 364(e) of the Bankruptcy Code.

## THE USE OF CASH COLLATERAL SHOULD BE APPROVED

24.    Under Section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use ... in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  The Debtor requires the use of Cash Collateral from the Lender's post-petition collateral.  Moreover, the Lender consents to the Debtor's use of Cash Collateral on the terms set forth herein,in the Interim Order and in the DIP Credit Agreement. Accordingly, the Debtor's request to use Cash Collateral should be approved.

## INTERIM APPROVAL SHOULD BE GRANTED

25.    Bankruptcy Rules 400l(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fifteen (15) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the

obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

26.      Pursuant to Bankruptcy Rules 400l(b) and (c), the Debtor requests that the Court conduct an expedited preliminary hearing on this motion and (a) authorize the Debtor to use Cash Collateral and borrow under the DIP Credit Agreement on an interim basis, pending entry of a final order, in order to (i) maintain and finance the ongoing operations of the Debtor, and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest, and (b) schedule a hearing to consider entry of a Final Order.

27.      The Debtor has an immediate need for cash to continue to operate.  Currently, the Debtor does not have sufficient funds with which to operate its business on an ongoing basis. Absent authorization from the Court to obtain secured credit and use cash collateral, as requested, on an interim basis pending a final hearing on the Motion, the Debtor will be unable to pay employees and meet its JIB obligations, which are required to maintain the value of the Debtor's assets.  Accordingly, the interim relief requested is therefore critical to preserving and maintaining the value of the Debtor assets.

28.      To implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

## VI.
## NOTICE

29.      Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Internal Revenue Service; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Debtor's twenty largest unsecured creditors and/or their counsel; (v) counsel to Adams Resources & Energy Inc.; (vi) Wells Fargo Bank; (vii) all relevant state and local taxing authorities; (viii) the United States Environmental Protection Agency; (ix) all relevant state environmental

agencies; and (x) all parties that have requested special notice pursuant to Bankruptcy Rule 2002. Notice of the Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested, the Debtors respectfully submit that no further notice of this Motion is required.

## VII.
## NO PRIOR REQUEST

30.    No previous request for the relief sought herein has been made by the Debtor to this or any other court.

## VIII.
## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter an Order, in substantially the same form as that attached as Exhibit A, granting the relief requested herein; (ii) schedule a final hearing on the Motion as soon as practicable; and (iii) provide such other relief as the Court deems appropriate and just.

Date:   April 21, 2017
        Wilmington, DE

SULLIVAN · HAZELTINE · ALLINSON LLC

/s/ William A. Hazeltine
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson III (No. 3476)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com
        zallinson@sha-llc.com

*Proposed Counsel for the Debtor and
Debtor-in Possession*