IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ADAMS RESOURCES EXPLORATION ) | Case No. 17-10866 (KG) |
| CORPORATION,[1] ) | Objection deadline: May 17, 2017 at 4:00 p.m. |
| ) | Hearing Date: May 24, 2017 at 11:00 a.m. |
| Debtor. ) | |

**DEBTOR'S MOTION FOR ORDER (A) APPROVING SALE
PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S OIL AND GAS ASSETS, (B) SCHEDULING AN
AUCTION AND HEARING TO APPROVE THE TRANSACTION AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
AND (C) ESTABLISHING PROCEDURES RELATING TO THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**

Adams Resources Exploration Corporation ("AREC" or the "Debtor"), by and through undersigned counsel, hereby moves this Honorable Court, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1(c) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for entry of an order, substantially in form attached hereto as **Exhibit A** (the "Proposed Order"), (a) approving sale procedures in connection with the sale of substantially all of the Debtor's oil & gas assets, (b) scheduling an auction and hearing to approve the transaction and approving the form and manner of notice thereof, and (c) establishing procedures relating to the assumption and assignment of executory contracts. In support of its Motion, the Debtor states as follows:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of Debtor's federal tax identification number, is Adams Resources Exploration Corp. (9131). The location of the Debtor's corporate headquarters and service address is: 17 S. Briar Hollow Lane, Suite 100, Houston, TX 77027.

## HIGHLIGHTED PROVISIONS REQUIRED BY DEL. BANKR. L.R. 6004-1

Del. Bankr. L.R. 6004-1 requires that motions requesting the approval of sale procedures highlight certain material terms contained in the sale procedures order. Such material terms are highlighted below:[2]

- Potential purchasers must sign a confidentiality agreement and agree to maintain the confidentiality of confidential information. Sales Procedures (attached as **Exhibit 1** to the Proposed Order), ¶ 2.

- The Deadline for Qualifying Bidders to submit a bid is July 12, 2017 at 5:00 p.m. EDT. Bids must be submitted to the Debtor; the Debtor's broker, Oil & Gas Assets Clearinghouse, LLC; the Debtor's Chief Restructuring Officer; counsel to the Debtor, counsel to the Debtor's post-petition secured lender, Adams Resources & Energy, Inc. (the "DIP Lender"); counsel to any official committee formed in this case; and the Office of the United States Trustee. Sales Procedures, ¶¶ 3 and 6.

- Qualifying Bids must contain financial information sufficient to demonstrate the Qualifying Bidder's financial ability to close the sale and provide adequate assurance of future performance to counterparties to Assigned Contracts and state that the Qualifying Bidder is financially capable of closing the sale. Sales Procedures, ¶ 3 (iv) and (vi).

- Qualifying Bids must state that the Qualifying Bidder is prepared to enter into a legally binding asset purchase agreement. Sales Procedures, ¶ 3(ii).

- Qualifying Bids must be accompanied by a clean and duly executed APA (the "Modified APA") and a marked Modified APA reflecting the variations from form of asset purchase agreement hereto as to be subsequently filed (the "APA"). Sales Procedures, ¶ 3 (iii).

- Qualifying Bids must state that the bid is irrevocable until closing if the bidder is the prevailing bidder or the back-up bidder. Sales Procedures, ¶ 3 (v).

- Qualifying Bids must identify the Assigned Contracts. Sales Procedures, ¶ 3 (vii).

- Qualifying Bids may not contain any provision requiring a break-up fee or expense reimbursement. Sales Procedures, ¶ 3 (viii).

- Qualifying Bids may not contain any financing or due diligence contingency and must provide that the bidder has had the opportunity to conduct due diligence and is not

---

[2] Capitalized terms not otherwise defined herein shall have the means ascribed to such terms in the Sales Procedures.

relying on any representations or warranties other than those contained in the APA. Sales Procedures, ¶ 3(x) and (xiii).

- The DIP Lender may submit a credit bid in an amount up to the amount of outstanding indebtedness owed to the DIP Lender (a "Credit Bid") by no later than 5:00 p.m. EDT on on the July 17, 2017. Any such Credit Bid shall be deemed to be a Qualifying Bid. Sales Procedures, ¶ 4.

- Qualifying Bids, other than a Credit Bid by the DIP Lender, must be accompanied by a cash deposit equal to ten percent of the purchase price, provided, however, that, if the DIP Lender submits a bid that includes a cash component, such bid must be accompanied by a cash deposit equal to ten percent of the purchase price in excess of the amount of the Credit Bid; provided, further, however, that the DIP Lender shall not be required to include any cash as a component of its bid. Sales Procedures, ¶ 3 (xii). The deposit will be forfeited if the bidder is the Prevailing Bidder and fails to close because of its breach of the APA. Sales Procedures, ¶ 10.

- The Debtor may request that a bidder, whether qualified or not, amend its bid prior to the Auction. Sales Procedures Order, Ex. 3, ¶ 3.

- The Debtor may, after the Bid Deadline, invite parties that have not previously submitted bids to do so and may extend the bidding deadline. Sales Procedures, ¶ 3.

- The Debtor may aggregate more than one bid when selecting the best bid provided that all bidders will remain subject to Section 363(n) of the Bankruptcy Code regarding collusive bidding. Sales Procedures, ¶ 5.

- The Debtor may select a back-up bidder at the Auction. If a back-up bidder is selected, such bidder must serve as the back-up bid and such bidder's bid will remain open and irrevocable until the earlier of the closing of a sale transaction with the Prevailing Bidder or thirty days after the Sale Hearing. The Debtor may close a sale transaction with the back-up bidder without further order of the Court if the Prevailing Bidder does not consummate a sales transaction. Sales Procedures, ¶ 10.

- The Debtor reserve the right to modify the Sale Procedures in order to maximize the value of the Debtor's assets. Sales Procedures, ¶ 12.

## JURISDICTION

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent

of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6003, 6004, 6006(a), 9007 and 9014.

## BACKGROUND

4. On April 21, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code commencing the above captioned case. The Debtor is operating as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case. To date, no official committee has been formed.

5. Currently, the Debtor owns oil and gas lease interests in Texas, Louisiana, Oklahoma, Kansas, Montana, and Arkansas (the "Oil and Gas Assets"). As of December 31, 2016, the Debtor owned fractional interests in approximately 470 wells (13.5 net wells). The Debtor operated six of those wells but all of the wells the Debtor operated have been plugged and abandoned as of March 31, 2017.

6. As of December 31, 2016, the Debtor had estimated proved reserves of approximately 889 thousand barrels of oil equivalents (MBOE), comprised of 4.214 billion cubic feet (BCF) of natural gas and 186.7 thousand barrels (MBO) of oil and condensate. The discounted future net income attributable to the Debtor's reserves was estimated to be approximately $3,477,400 as of December 31, 2016.

7.    As additional background and support for this Motion, the Debtor refers the Court to the *Declaration of Riney in Support of Chapter 11 Petition First Day Motions* [Docket No. 8], which was filed on the Petition Date.

**The Debtor's Marketing and Sale Efforts and the Need for a Sale Process**

8.    Over the past several years, AREC has carried out several asset dispositions in an effort to respond to market conditions and improve the company's financial performance. The Debtor's most recent disposition of lease interests were in 2012 and 2014. In 2012, the Debtor sold certain producing properties to Jonder Exploration, SV Resources Partners, Seneca Resources, and Chevron U.S.A. for a purchase price of $4.1 million, representing a net gain of $2.5 million. In 2014, the Debtor sold additional assets to Obloen Resources, Penn Virginia, Tanos Energy, and Red Rocks Energy Partners for $3.6 million, representing a net gain of $2.2 million.

9.    In 2016, AREC informally discussed a potential sale of the remainder of its Oil and Gas Assets with prospective buyers. While these discussions generated some interest among potential buyers, AREC's management determined that a formal marketing process might assist in maximizing the value received by AREC for the Oil and Gas Assets.

10.    Over the past several months, AREC interviewed and placed inquiries with a number of brokers and investment banks. On April 19, 2017, the Debtor entered into an agreement with Oil & Gas Asset Clearinghouse (the "OGA Clearinghouse") as its broker to conduct the marketing and sale of the Debtor's Oil and Gas Assets, subject to the Court's approval of the engagement. OGA Clearinghouse's staff has decades of combined experience in land, engineering, geology and transactional experience. OGA Clearinghouse markets oil & gas properties implementing customized marketing processes for each asset in order to maximize

the value of the assets and is one of the leaders in the marketplace. The Debtor believes, in the exercise of its business judgment, that the marketing and sale of its assets in this bankruptcy case pursuant to the Sale Procedures described below will maximize value to the estate and the recovery of the Debtor's creditors.

## RELIEF REQUESTED

11. By this Motion, the Debtor seeks the entry of an order (a) approving sale procedures in connection with sale of substantially the Debtor's assets Oil and Gas Assets subject to higher or better offers (the "Sale Procedures"), (b) scheduling an auction and hearing to approve the sale of the Oil and Gas Assets and approving the form and manner of notice thereof, and (c) establishing procedures relating to the assumption and assignment of executory contracts and unexpired leases. The Debtor submits that the Sale Procedures will permit interested parties more than a reasonable opportunity to evaluate whether to propose a bid for the Debtor's assets.

## BASIS FOR RELIEF

A.  **Approval Of Sale Procedures**

12. To ensure the highest or best price is obtained for the sale of the Debtor's Oil and Gas Assets, the Debtor has developed the Sale Procedures attached to the Proposed Order as **Exhibit 1** for the contemplated Auction and Sale. The Sale Procedures are designed to maximize value for the Debtor's estates and ensure that a marketing and sales process is undertaken by the Debtor. Set forth below is a summary of the Sale Procedures.[3]

---

[3] This summary is solely for the benefit of the Court and parties in interest. To the extent that this summary and the terms of the Sale Procedures are inconsistent, the terms of the Sale Procedures shall control.

- **Assets to be Sold**: The Debtor shall offer for sale (the "Asset Sale") all or substantially all of the Debtor's Oil and Gas Assets and other assets related thereto (collectively, the "Acquired Assets").

- **Confidentiality Agreements**: Upon execution of a confidentiality agreement, in form and substance satisfactory to the Debtor, any party that wishes to conduct due diligence on the Acquired Assets may be granted access to material and/or confidential information in the Debtor's discretion; *provided, however*, that the Debtor has no obligation to provide information after the Bid Deadline (defined below). The Debtor will, at the request of any bidder, make management available to bidders prior to the Bid Deadline.

- **Determination of "Qualifying Bidder" Status**: In order to be deemed a "Qualifying Bidder" and participate in the bidding process and Auction, each potential bidder other than the DIP Lender must deliver to the Notice Parties identified in paragraph 5 a written offer or group of offers so as to be received by no later than **5:00 p.m. prevailing Eastern time on July 12, 2017** (the "Bid Deadline") that:

    i. states that such Qualifying Bidder offers to purchase the Acquired Assets upon the terms and conditions substantially as set forth in the APA or pursuant to an alternative structure that the Debtor determines is no less favorable than the terms and conditions of the APA;

    ii. states that such Qualifying Bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Acquired Assets on terms and conditions no less favorable to the Debtor than the terms and conditions contained in the APA (as determined by the Debtor in their reasonable business judgment, in consultation with the DIP Lender) including, without limitation, the purchase of the Acquired Assets and assumption of the Assumed Liabilities (to be defined in the APA);

    iii. be accompanied by a clean and duly executed APA (the "Modified APA") and a marked Modified APA reflecting the variations from the form of the APA;

    iv. states that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Modified APA;

    v. states that such Qualifying Bidder's offer is irrevocable until the closing of the purchase of the Acquired Assets if such Qualifying Bidder is the Prevailing Bidder or the Back-Up Bidder (as defined below);

    vi. contains satisfactory information that will allow the Debtor to make a reasonable determination, in consultation with the DIP Lender, as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA, including, without limitation, such financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtor to allow the

Debtor to serve within one (1) business day after such receipt such information on counter-parties to any contracts or leases being assigned in connection with the proposed sale;

vii. identifies with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing;

viii. does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

ix. fully discloses the identity of each entity that will be bidding for the Acquired Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

x. (1) does not contain any due diligence or financing contingencies of any kind, and (2) contains evidence that the bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the purchase of the Acquired Assets, which evidence is reasonably satisfactory to the Debtor; and the DIP Lender;

xi. includes satisfactory evidence of that the submission, execution, and delivery of the Modified APA and the closing on the purchase of the Acquired Assets is authorized;

xii. other than a Credit Bid by the DIP Lender, is accompanied by a cash deposit in the amount of 10% of the Qualifying Bidder's bid; provided, however, that, if the DIP Lender submits a bid that includes a cash component, such bid must be accompanied by a cash deposit equal to ten percent of the purchase price in excess of the amount of the Credit Bid; provided, further, however, that the DIP Lender shall not be required to include any cash as a component of its bid;

xiii. includes an acknowledgment and representation that the Qualifying Bidder; (1) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the APA or the Modified APA, and (4) agrees that any non-disclosure agreement or confidentiality agreement entered into with the Debtor shall be enforceable by the Prevailing Bidder(s); and

xiv. is in an amount that the Debtor, in consultation with the DIP Lender, deems to be a sufficient offer for the Acquired Assets.

A bid meeting the above requirements shall constitute a "Qualifying Bid." The Debtor, in consultation with the DIP Lender, shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by no later than 5:00 p.m. prevailing Eastern time on July 17, 2017.

The Debtor reserves the right, at any time after the Bid Deadline and prior to the commencement of the Auction, to request parties submitting written offers (whether or not such offers might be determined to be Qualifying Bids) to amend their written offers.

The Debtor further reserves the right, in its reasonable business judgment, at any time after the Bid Deadline and prior to the conclusion of Auction, to (i) allow parties that have submitted bids that are not Qualifying Bids to submit additional bids and/or (ii) invite other parties that have not previously submitted bids to do so such that they may be considered pursuant to the procedures set forth in the Sale Procedures. The Debtor may also extend the Bid Deadline once or successively, but is not obligated to do so. If the Debtor extends the Bid Deadline, it will promptly notify all Qualifying Bidders of such extension.

- **Credit Bidding**: The DIP Lender may submit a bid by no later than 5:00 p.m. EDT on the July 17, 2017, which bid may include a credit bid in an amount up to the amount of outstanding indebtedness owed to the DIP Lender (a "Credit Bid"). Any such Credit Bid shall be deemed to be a Qualifying Bid.

- **Aggregate Bids**: Persons who collectively are referred to as a "Qualifying Bidder" need not be affiliated and need not act in concert with one another and the Debtor, in consultation with the DIP Lender, may aggregate separate bids from unaffiliated persons to create one "Bid" from more than one "Qualifying Bidder"; *provided, however,* that all bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding.

- **Deadline for Submission**: All Qualifying Bids must be submitted so as to be received by the Bid Deadline by the following parties (the "Notice Parties"):

(i) Adams Resources & Exploration Corporation, Attn: John Riney, President, 17 South Briar Hollow Lane, Suite 100, Houston, TX 77027;

(ii) Gavin Solmonese, 919 North Market Street, Suite 600, Wilmington, DE 19801, Attn: Stan Mastil (stanley.mastil@gavinsolmonese.com);

(iii) Oil & Gas Assets Clearinghouse, LLC, 1235 North Loop West, Suite 500, Houston, TX 77088, Attn: Patrick DaPra (pdapra@ogclearinghouse.com).

(iv) Counsel to the Debtor, Sullivan Hazeltine Allinson LLC, 901 North Market Street, Suite 1300, Wilmington, DE, 19801, Attn: William D. Sullivan (bsullivan@sha-llc.com) and William A. Hazeltine (whazeltine@sha-llc.com);

(v) Counsel to the DIP Lender, Ashby & Geddes, 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE, 19899, Attn: Ricardo Palacio (rpalacio@ashby-geddes.com) and Gregory A. Taylor (gtaylor@ashby-geddes.com);

(vi) Counsel to any official committee appointed in this case; and

(vii) The Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Room 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Juliet M. Sarkessian, Esquire (juliet.m.sarkessian@usdoj.gov).

- **Evaluation of Qualifying Bids**: Prior to the Auction, the Debtor shall determine, in its reasonable judgment, after consultation with the DIP Lender, which of the Qualifying Bids is likely to result in the highest or best value to the Debtor. The Debtor will have the right, in its reasonable business judgment after consultation with the DIP Lender (if the DIP Lender did not submit a bid, or if the DIP Lender submitted a bid but unequivocally revoked its bid and waived its right to further bid), to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified herein and may deem such bids to be Qualifying Bids.

- **No Qualifying Bids**: If no timely conforming Qualifying Bids are submitted by the Bid Deadline, the Debtors, in consultation with the DIP Lender, may, but is not required to, in its reasonable business judgment, cancel the Auction.

- **Auction**: In the event that the Debtor receives one or more Qualifying Bids in accordance with the Sale Procedures, the Debtor shall conduct an Auction with respect to the Acquired Assets. The Auction will take place starting at **10:00 a.m. prevailing Eastern Time on July 19, 2017** at the office of Sullivan Hazeltine Allinson LLC, 901 North Market Street, Suite 1300, Wilmington, DE 19801, or at such other place, date and time as may be designated by the Debtor. Only (i) parties and their advisors that have been advised that they have submitted a Qualifying Bid; (ii) the DIP Lender and its counsel; (iii) counsel for any official committee appointed in this case, and (iv) other parties specified in the Sale Procedures Order will be permitted to participate in and/or make any statements on the record at the Auction provided, however, that any creditor of the Debtor may attend the auction (subject to space limitations). Subject to the Debtor's reservation of rights as specified herein, the Auction shall be governed by the following procedures:

    i. Only Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

    ii. Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

iii. The Qualifying Bidders shall appear in person at the Auction and through a duly authorized representative;

iv. Bidding shall commence at the amount of the highest Qualifying Bid submitted prior to the Auction; provided, however, that if the highest bid does not conform to one or more of the bidding requirements, but the Debtor, after consultation with the DIP Lender (if the DIP Lender did not submit a bid, or if the DIP Lender submitted a bid but unequivocally revoked its bid and waived its right to further bid), determines that such bid is to be treated as a Qualifying Bid, then any Qualifying Bidder will have the opportunity to submit a bid at the Auction on the same basis;

v. Qualifying Bidders may then submit successive bids in increments of at least $10,000.00 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $10,000.00 higher than the previous bid; provided that the Debtor, after consultation with the DIP Lender (if the DIP Lender did not submit a bid, or if the DIP Lender submitted a bid but unequivocally revoked its bid and waived its right to further bid), shall retain the right to modify the bid increment requirements at the Auction.

vi. The Auction will be conducted in a manner as determined by the Debtor, after consultation with the DIP Lender (if the DIP Lender did not submit a bid, or if the DIP Lender submitted a bid but unequivocally revoked its bid and waived its right to further bid), but with each bidder being informed of the terms of the previous bid;

vii. All Qualifying Bidders shall have the right to submit additional bids and make additional modifications to their respective Modified APA at the Auction, provided that any such modifications to the Modified APA, on an aggregate basis and viewed in whole, shall, in the business judgment of the Debtor, after consultation with the DIP Lender (if the DIP Lender did not submit a bid, or if the DIP Lender submitted a bid but unequivocally revoked its bid and waived its right to further bid), not be less favorable to the Debtor than any prior bid by such Qualifying Bidder; and

viii. The Debtor shall have the right to request any additional financial information that will allow the Debtor to make a reasonable determination as the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA as further amended during the Action process.

The concluding date and time of the Auction shall be stated on the record. At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, the Debtor, after consultation with the DIP Lender (if the DIP Lender did not submit a bid, or if the DIP Lender submitted a bid but unequivocally revoked its bid and waived its right to further bid), will: (i) review each Qualifying Bid, and consider each Qualifying Bid, on

the basis, without limitation, of the amount of the purchase price, the form of consideration being offered, the likelihood that the transaction will close, the number, type and nature of any changes to the APA requested by each bidder, and the net benefit to the Debtor's estates, and (ii) identify the highest or otherwise best offer(s) (which may be a combination of more than one Qualifying Bid) for the Acquired Assets received at the Auction (the "Prevailing Bid(s)") and the bidder(s) making such bid(s) (the "Prevailing Bidder(s)"), as well as identifying the Back-Up Bidder(s) (as defined below). The Auction shall not be closed until the Prevailing Bidder(s) and Back-Up Bidder(s) are identified and the Debtor announces on the record that the Auction is closed.

Within five (5) business days after conclusion of the Auction, the Prevailing Bidder(s) shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Prevailing Bid was made. The results at the close of the Auction shall be final and no additional bids will be accepted after the close of the Auction.

- **Back-Up Bidder**: If an Auction is conducted, the party or parties with the next highest or otherwise best Qualifying Bid(s) at the Auction, as determined by the Debtor in the exercise of its business judgment, after consultation with the DIP Lender (if the DIP Lender did not submit a bid, or if the DIP Lender submitted a bid but unequivocally revoked its bid and waived its right to further bid), shall be required to serve as a back-up bidder (the "Back-Up Bidder",) and keep such bid open and irrevocable until the earlier of (i) 5:00 p.m. prevailing Eastern time on the date which is thirty (30) days after the date of the conclusion of the Sale Hearing (the "Outside Back-Up Date") or (ii) the closing of the sale transaction with the Prevailing Bidder(s). Following the Sale Hearing, if the Prevailing Bidder(s) fail to consummate an approved Sale because of a breach or failure to perform on the part of such Prevailing Bidder(s), the Back-Up Bidder(s) will be deemed to have the new prevailing bid, and the Debtor will be authorized, but not required, to consummate the Sale with the Back-Up Bidder(s) without further order of the Court. In such case, the defaulting Prevailing Bidder's deposit, if any, shall be forfeited to the Debtor, and the Debtor specifically reserve the right to seek all available damages from the defaulting Prevailing Bidder(s).

- **Return of Deposits**: Except as otherwise provided in the Sale Procedures, all deposits shall be returned to each bidder not selected by the Debtor in accordance with the above procedures as the Prevailing Bidder(s) or the Back-Up Bidder(s) by no later than the fifth (5th) business day following the conclusion of the Auction. The deposit of the Back-Up Bidder(s) shall be held by the Debtor until the earlier of 24 hours after (i) the closing of the sale transaction with the Prevailing Bidder(s) and (ii) the Outside Back-Up Date.

- **Reservation of Rights:** Notwithstanding any of the foregoing, the Debtor reserves its rights, in the exercise of its fiduciary obligations, and after consultation with the DIP Lender (if the DIP Lender did not submit a bid, or if the DIP Lender submitted a bid but unequivocally revoked its bid and waived its right to further bid), to modify the Sale Procedures or impose, at or prior to the Auction, additional terms and conditions on the sale of the Acquired Assets, including, without limitation, extending the deadlines set

forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, withdrawing from the Auction the Acquired Assets at any time prior to or during the Auction or canceling the Auction, and rejecting all Qualifying Bids.

- **Sale Hearing**: The Prevailing Bid(s) will be subject to approval by this Court. The hearing to approve the Prevailing Bid(s) shall take place on _____, 2017 at \_\_:\_0\_\_.m. prevailing Eastern time. Objections to the sale of the Acquired Assets, if any, must be filed with the Court and served on the Notice Parties but not later than _____, 2017 at 4:00 p.m. prevailing Eastern time. The Debtor will seek the entry of an order of this Court at the Sale Hearing approving and authorizing the Asset Sale to the Prevailing Bidder(s).

13. The Debtor submits that the proposed Sale Procedures should be approved as a valid exercise of the Debtor's business judgment because they are reasonably designed to maximize the value of the Acquired Assets. Sale procedures should be approved when they provide a benefit to the estate by maximizing the value of the assets. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535-537 (3rd Cir. 1999) (detailing situations where bidding incentives are appropriate in bankruptcy because they provide a benefit to the estate.); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

14. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3rd Cir. 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3rd Cir. 2003) (same); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"). To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing

the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See In re O'Brien Envtl. Energy*, 181 F.3d at 537; *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures "encourage bidding and … maximize the value of the debtor's assets"). *See also In re Financial News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) (as amended) ("court-imposed rules for the disposition of assets … [should] provide an adequate basis for comparison of offers, and [should] provide for an [sic] fair and efficient resolution of bankrupt estates").

15. The proposed Sale Procedures will allow the Debtor to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. Such a process will increase the likelihood that the Debtor will receive the best possible consideration for the Acquired Assets by helping ensure a competitive and fair bidding process. Consistent with sale procedures used in comparable situations, the proposed Sale Procedures use bid increments appropriate for comparable sales. They also allow the Debtor to undertake the auction process in as expeditious a manner as possible, which is essential to maintaining and potentially maximizing value for the estates.

16. The Auction and the proposed Sale Procedures should promote active bidding from interested parties and thus dispel any doubts as to the highest or best offer reasonably available for the Acquired Assets. Thus, the proposed Sale Procedures are reasonable, appropriate and within the Debtor's sound business judgment under the circumstances and should be approved.

### B. Approval of the Notice Procedures

17. Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify creditors of the proposed sale of the Acquired Assets, including a disclosure of the time and place of an auction, the terms and conditions of a sale, and the deadline for filing any objections. The Debtor requests notice of the Sale, the Auction, the Sale Hearing, the Cure Amounts, and the Sale Procedures be deemed adequate and sufficient if, on or before May 30, 2017, the Debtor (or its agents) serve by first class mail, postage prepaid, copies of the Sale Notice, substantially in the form attached to the Proposed Order as **Exhibit 2**,[4] upon the following entities: (i) the Office of the United States Trustee for the District of Delaware; (ii) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Attorneys General in the states where any of the Acquired Assets are located (v) the Debtor's twenty largest unsecured creditors and/or their counsel; (vi) counsel to the DIP Lender; (vii) counsel to any official committee appointed in this case; (viii) the United States Environmental Protection Agency; (ix) state environmental agencies in the jurisdictions where any of the Acquired Assets are located; (x) the counterparties to each of the Debtor's contracts and leases that may be an Assigned Contract; (xi) all Persons known or reasonably believed to have asserted a lien or encumbrance on any of the Acquired Assets; (xii) all Persons known or reasonably believed to have expressed a bona fide interest in acquiring the Acquired Assets; and (xiii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002.

---

[4] The Sale Notice will direct parties to contact Sullivan Hazeltine Allinson LLC, counsel to the Debtor, for more information or to obtain a copy of any related document (subject to any necessary confidentiality agreement).

18. The Debtor submits that the notice procedures herein comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Sale, the Sale Procedures, the Auction, and the Sale Hearing on the Debtor's creditors and other parties in interest that are entitled to notice of the sale of the Acquired Assets, as well as to those parties who have expressed an interest, or may express an interest, in bidding on the Acquired Assets. Based upon the foregoing, the Debtor respectfully requests that this Court approve the notice procedures proposed above.

C. **Approval of Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases**

19. To facilitate and effect the sale of the Acquired Assets, the Debtor may be required to assume and assign to the Prevailing Bidder(s) certain executory contracts and unexpired leases (the "Assigned Contracts"). No later than May 30, 2017, the Debtor shall cause notice to be provided to all counterparties to executory contracts and unexpired leases that may be Assigned Contracts, substantially in the form attached to the Proposed Order as **Exhibit 3** (the "Cure Notice"). The Cure Notice shall provide the counterparties to the possible Assigned Contracts notice of the amount that the Debtor believe must be paid to cure any defaults under such contract upon the assumption and assignment as required under section 365 of the Bankruptcy Code (the "Cure Amount").

20. The Debtor requests that any non-debtor counterparties to executory contracts and unexpired leases listed on the Cure Notice that wishes to obtain information regarding adequate assurance of future performance regarding any of the Qualifying Bidders be required to notify Debtor's counsel, Sullivan Hazeltine Allinson LLC, 901 North Market Street, Suite 1300, Wilmington, DE 19801, Attn: William A. Hazeltine, Telephone: (302) 428-8191, Facsimile: (302) 428-8195, E-mail: whazeltine@sha-llc.com (the "Request for Adequate Assurance

16

Information"). The Request for Adequate Assurance Information must include an email address and/or postal address to which a response to such request can be sent.

21. The Debtor shall serve any party making a Request for Adequate Assurance Information by email and/or overnight delivery with any information relating to adequate assurance of future performance provided by Qualifying Bidders as provided in the Sales Procedures by the later of (i) July 17, 2017 and (ii) one business day after receipt of the Request for Adequate Assurance Information.

22. Objections, if any, to the proposed assumption and assignment of the Assumed Contracts, including, but not limited to, objections relating to the Cure Amount and/or adequate assurances of future performance, must be filed with the Court and served so as to be received by the Notice Parties on or before _____. 2017 at 4:00 p.m. prevailing Eastern Time.

23. Except as may otherwise be agreed to between the non-debtor counterparty to an Assigned Contract and the Prevailing Bidder(s), on the Closing Date, the Debtor and/or the Prevailing Bidder(s) shall cure those defaults under the Assigned Contracts that need to be cured in accordance with Section 365(b) of the Bankruptcy Code by (a) payment of the undisputed Cure Amounts, and/or (b) reserving amounts with respect to any disputed Cure Amounts. In the event of a dispute regarding the Cure Amount, any payments required, following entry of a Final Order resolving such dispute, shall be made as soon as practicable thereafter. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Assumed Contract or other documents as of the date of the Cure Notice.

24. The Debtor submits that these notice procedures provide adequate and sufficient notice to counterparties to executory contracts and unexpired leases that may be Assigned

Contracts of the possible assumption and assignment of such contracts and leases and the proposed Cure Amounts. Based upon the foregoing, the Debtor respectfully request that this Court approve the above procedures for the assumption and assignment of executory contracts and unexpired leases.

## NOTICE

25. Notice of this Motion has been provided by overnight hand or overnight delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtor's twenty largest creditors; and (iii) counsel to Adams Resources & Energy Inc., and (iv) all parties that have requested special notice pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need be provided.

**[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]**

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtor respectfully request that this Court enter the Proposed Order attached hereto as **Exhibit A**, (a) (i) establishing Sales Procedures in connection with the sale of the Acquired Assets; (ii) scheduling a deadline for the Debtor's receipt of bids; (iii) scheduling the Auction to sell the Acquired Assets; (iv) scheduling the Sale Hearing to consider approval of the Sale; (v) approving the form and manner of the Sale Notice; (vi) establishing certain procedures relating to the assumption and assignment of the Assigned Contracts; and (vii) granting certain related relief, and (b) granting such other and further relief as the Court deems just and proper.

Date: May 4, 2017
Wilmington, DE

SULLIVAN • HAZELTINE • ALLINSON LLC

/s/ William G. Hazeltine

William D. Sullivan
William A. Hazeltine (No. 3294)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: 302.428.8191
Fax: 302. 428.8195
Email: bsullivan@sha-llc.com
       whazeltine@sha-llc.com

*Proposed Counsel for the Debtor and Debtor-in-Possession*