IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

Adams Resources Exploration Corporation

Debtor.

Case No: 17-10866-KG

Chapter 11

Hearing Date: May 17, 2017 at 4:00 p.m.
Obj. Deadline: May 24, 2017 at 11:00 a.m.

**APPLICATION OF THE DEBTOR FOR AN ORDER
AUTHORIZING AND APPROVING THE EMPLOYMENT OF
GAVIN/SOLMONESE LLC AS CHIEF RESTRUCTURING OFFICER FOR
THE DEBTOR *NUNC PRO TUNC* TO APRIL 21, 2017**

The above-captioned Debtor and Debtor-in-possession (collectively, the "Debtor"), hereby submits this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtor to employ Gavin/Solmonese, LLC ("G/S") as its Chief Restructuring Officer ("CRO"), effective *nunc pro tunc* to August 12, 2015. In support of this Application, the Debtor respectfully represents as follows:

**Jurisdiction**

1. This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1

3. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (11 U.S.C. §§ 101–1532, as amended, the "Bankruptcy Code").

## Background

4. On June 19, 2015 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate their businesses and manage their properties as Debtor-in-possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Debtor are engaged principally in the business of the exploration for and production of oil.

6. In order to organize its financial information and pursue the most financially advantageous avenue to exit bankruptcy, the Debtor has concluded that it is in the best interests of the Debtor's estate to retain a CRO in order to efficiently and effectively work through its bankruptcy case. The Debtor believes that having a CRO in place will ensure effective and efficient negotiations and resolutions with Debtor's creditors and investors, and allow the Debtor to successfully restructure its debt and maximize recovery for all creditors.

7. Accordingly, effective as of April 20, 2017, and subject to the Court's approval, the Debtor and G/S entered into an engagement letter (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit B**, pursuant to which G/S will serve as the Debtor's CRO.

## Relief Requested

8. By this Application, the Debtor requests the entry of an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code authorizing the employment of G/S as the Debtor's CRO in its chapter 11 case *nunc pro tunc* to April 21, 2017.

A. **Qualifications**

9. G/S is an experienced financial professional firm with many years of corporate finance experience in corporate restructuring. G/S has worked with companies, management teams, boards of directors and creditor constituencies to realize value through improvement in operations and balance sheet initiatives in numerous assignments. G/S has acted as CRO for numerous clients. In that capacity, G/S has acted as the intermediary between management, creditors and equity groups and in many cases facilitated successful reorganizations. G/S typically manages day-to-day activities, controls the checkbook, assesses the needs of the clients and manages companies through the bankruptcy process.

B. **Services to Be Provided**

10. Subject to entry of the Proposed Order and consistent with the terms of the Engagement Letter, G/S will serve as the CRO of the Debtor. Subject to entry of the Proposed Order and consistent with the terms of the Engagement Letter, the duties of G/S will include the following:

- Day to day operational and/or financial management of the bankruptcy case as Chief Restructuring Officer of Debtor, including oversight of all financial activities of the Debtor.

- Negotiation and execution of financing relationships including, if necessary, preparation of a situational analysis/business plan for submission to potential lenders or investors.

- Negotiation of and amendments to contracts, including rejection or assumption of executory contracts and real property leases.

- The compromise of accounts payable and receivable and of notes payable and receivable.

- Advise client's management as to the hiring and discharge of employees.

- Direct communication with Debtor's creditors, vendors, customers and employees and other constituencies with respect to the Debtor's affairs and the progress of the Bankruptcy Case.

- Plan and provide overall management of any required wind-down efforts, including liquidation of residual assets.

- Provide assistant Chief Restructuring Officer staff, as necessary, to provide interim accounting, information technology, operations or other capabilities or consulting expertise as required to facilitate Debtor's efficient progress through the Bankruptcy Case.

- Such other duties as are usually and customarily performed by a Chief Restructuring Officer, of businesses of similar kind and size as the Debtor.

11. In the event that the Debtor deems it necessary, G/S may also seek financing for the Debtor or a purchaser for the Debtor's business and may also assist the Debtor in recruiting further managers or officers.

C. **Professional Compensation**

12. The principal terms of G/S's engagement are as follows:

- G/S will be paid its standard hourly rates for the services its personnel provide to the Debtor.

- G/S will be reimbursed for any out-of-pocket expenses reasonably incurred in connection with the services rendered. Such expenses include, but are not limited to, travel, telephone, fax, and delivery services. Non-working travel time is charged at fifty percent (50%) of the consultant's standard hourly rate.

- If G/S is requested to perform the services listed in Paragraphs I.E, I.F or I.G of its engagement letter (i.e. assistance with financing and/or sale and/or recruitment as set forth in more detail in sections I(E)-(G) of the Engagement Letter), G/S will be entitled to additional success fees (each a "Success Fee"). The success fee for financing shall be five percent (5%) of the face amount of the funding. The success fee for a sale shall be five percent (5%) of the gross consideration paid or forgiveness of debt received. The success fee for recruitment of officers or managers is twenty-five percent (25%) of the total annual compensation of such individual.

13. G/S will file with the Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a monthly basis. The reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the

expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10 hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in half-hourly increments. Parties in interest shall have fourteen (14) days after the date each report is served to object to such report. In the event an objection is raise and not consensually resolved, the objected to portion of the staffing report shall be subject to review by the Court. No payments shall be made to G/S until the objection period has passed, and in the event an objection is raised, no payment shall be made to G/S on account of the objected to portion of such staffing report until such objection is resolved.

14. The Debtor will not seek authority to engage G/S as a professional under section 327 of the Bankruptcy Code in its chapter 11 case. Any Success Fee will only be paid subject to the approval of the Bankruptcy Court.

15. The Debtor believes that this compensation is fair and reasonable in light of industry practice and market rates, G/S's experience in comparable chapter 11 cases and the scope of work to be performed.

16. As set forth in the Declaration of Edward Gavin (the "Gavin Declaration"), attached hereto as **Exhibit C**, the Debtor does not owe G/S any amount for services performed or expenses incurred prior to the commencement of the Debtor's chapter 11 cases, and, thus, G/S is not a prepetition creditor of the Debtor.

### D. <u>Indemnification</u>

17. The Engagement Letter provides that the Debtor will indemnify and hold harmless G/S to the full extent lawful, against any and all losses, actions, claims, damages, liabilities or costs including reasonable legal fees and expenses (collectively, "<u>Loss</u>"), whether or not in connection with a matter in which G/S is a party, as and when incurred, directly or indirectly, caused by, relating to, based upon or arising out of G/S acting for Debtor pursuant to the Engagement Letter. G/S shall not be held liable for errors in judgment. Notwithstanding the foregoing, Debtor shall have no duty to indemnify or to hold harmless G/S for any loss, action, claim, damage, liability or cost to the extent such Loss is found, in a final judgment by a court of competent jurisdiction, to have resulted primarily and directly from the willful misconduct or unlawful activities of G/S. In the event that any indemnification claim is brought by G/S against the Debtor during or as a result of this bankruptcy case, G/S will seek approval of any such claim in this Court.

18. The terms of the Indemnification Provisions were fully negotiated between the Debtor and G/S at arm's length and the Debtor respectfully submit that the Indemnification Provisions are reasonable and appropriate. Accordingly, as part of this Application, the Debtor request that this Court approve the Indemnification Provisions.

### E. <u>Disinterestedness</u>

19. To the best of the Debtor's knowledge, information and belief, G/S does not have any connection with or any interest adverse to the Debtor, its significant creditors, or any other significant party in interest known to G/S, or its respective attorneys and accountants, except as may be set forth in the Gavin Declaration. Although the Debtor submits that the retention of G/S is not governed by section 327 of the Bankruptcy Code, the Debtor attaches the Gavin Declaration, which discloses, among other things, any relationship that G/S has with the Debtor,

its significant creditors, or other significant parties in interest known to G/S. The Debtor submits that G/S is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

## Basis for Relief

20. The Debtor requests authority to retain G/S under the terms of the Engagement Letter pursuant to section 363 of the Bankruptcy Code, which provides in pertinent part that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved pursuant to such provision where, as here, they are supported by management's sound business judgment. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.2d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit had adopted the "sound business purpose" test for section 363(b)).

21. The retention of corporate officers is proper under section 363 of the Bankruptcy Code. Courts recognize the applicability of section 363(b) of the Bankruptcy Code to the use of estate property to compensate individuals employed outside the ordinary course of business. *See In re First Int'l Services Corp.*, 25 B.R. 66, 69 (Bankr. D. Conn. 1982). Indeed, courts have relied upon section 363(b) as the basis upon which to employ and compensate professionals to serve as officers or other management-level personnel employed by the debtor. *See, e.g., In re Spansion Inc.*, Case No. 0-10690 (KJC) (Bankr. D. Del. Apr. 13, 2009); *In re Verasun Energy Corp.*, Case No. 08-12687 (PJW) (Bankr. D. Del. Dec. 17, 2008); *In re*

*WorldSpace, Inc.*, Case No. 08-12412 (KJC) (Bankr. D. Del. Nov. 10. 2008); *In re Hines Horticulture, Inc.*, Case No. 08-11922 (KJC) (Bankr. D. Del. October 2, 2008).

22. The Debtor has determined, in the exercise of its business judgment, that the fee structure set forth in the Engagement Letter appropriately reflects the nature of the services to be provided by G/S, contains reasonable terms and conditions of employment, and should be approved under section 363 of the Bankruptcy Code. Additionally, the Debtor submits that the employment of G/S as CRO is consistent with the "Jay Alix Protocol" established by the U.S. Trustee.

### Notice

26. Notice of this Motion has been provided by overnight hand or overnight delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtor's twenty largest creditors; and (iii) counsel to Adams Resources & Energy Inc., and (iv) all parties that have requested special notice pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need be provided.

**Conclusion**

WHEREFORE, the Debtor respectfully requests, for the reasons set forth herein, that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, authorizing and approving the employment by the Debtor of G/S as the Debtor's CRO, effective as of April 21, 2017, and granting such other and further relief as this Court deems just and proper.

Date: May 4, 2017
Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

/s/ William D. Sullivan

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
901 North Market Street, Suite 1300
Wilmington, DE  19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email: bsullivan@sha-llc.com
       whazeltine@sha-llc.com

*Proposed Attorneys for Debtor and Debtor in Possession*