IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ADAMS RESOURCES ) | Case No. 17-10866 (KG) |
| EXPLORATION CORPORATION,[1] ) | |
| ) | **Related Docket Nos. 7 & 13** |
| Debtor. ) | |
| ) | |

## FINAL ORDER (I) AUTHORIZING DEBTOR IN POSSESSION TO OBTAIN POSTPETITION FINANCING; AND (II) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS

This Final Order (1) Authorizing Debtor in Possession to Obtain Postpetition Financing; and (2) Granting Liens, Security Interests and Superpriority Claims (this "Final Order") is entered into by this Court after adequate notice and hearing upon the *Motion for Interim Order and Final Order (1) Authorizing Debtor in Possession to Obtain Postpetition Financing; and (2) Granting Liens, Security Interests and Superpriority Claims* (the "Motion"), and upon the terms agreed to by and among Adams Recourses Exploration Corporation (the "Debtor") and Adams Resources & Energy, Inc. (the "Lender"); and upon the terms of the Motion, the stipulations, acknowledgements and agreements of the Debtor and the Lender, the statements of the parties and their counsel at the hearing on the Motion, and the record of the proceedings, the Court makes the following findings of fact and rulings of law:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of Debtor's federal tax identification number, is Adams Resources Exploration Corp. (9131). The location of the Debtor's corporate headquarters and service address is: 17 S. Briar Hollow Lane, Suite 100 Houston, TX 77027.

## FINDINGS OF FACT

### The Debtor's Chapter 11 Cases; Procedural Background; Jurisdiction and Notice

A.  On April 21, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and thereby commenced a case thereunder (together, the "Chapter 11 Case"). Since the Petition Date, the Debtor has been operating its business and managing its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No committees have been appointed. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case.

B.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).

C.  On April 25, 2017, the Court held an interim hearing on the Motion and thereafter entered the *Interim Order (I) Authorizing and Approving Emergency Post-Petition Financing; (II) Granting Liens; and (III) Providing Superpriority Administrative Expense Status* (the "Interim Order") [Docket No. 13]. The Court scheduled a final hearing on the Motion for May 24, 2017 (the "Final Hearing").

D.  Notice. In compliance with Bankruptcy Rule 4001(b) and the Interim Order, the Debtor has provided notice of the entry of the Interim Order and the scheduling of a Final Hearing to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Internal Revenue Service; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Debtor's twenty largest unsecured creditors and/or their counsel; (v) counsel to the Lender; (vi) Wells Fargo Bank; (vii) all relevant state and local taxing authorities; (viii) the United States Environmental

Protection Agency; (ix) all relevant state environmental agencies; and (x) all parties that have requested special notice pursuant to Bankruptcy Rule 2002. The provision of notice in the manner described above was adequate and sufficient under the circumstances and under Bankruptcy Rule 4001(b) and no further or other notice was required or need be given.

**The Need for Debtor in Possession Financing and Use of Cash Collateral**

E.  A critical need exists for the Debtor to obtain funds in order to fund the operational needs of its oil and gas operations, solely to the extent set forth under the Budget (as defined herein) and under the DIP Loan Facility (as defined herein). The Debtor is unable to obtain further postpetition financing on an unsecured basis under sections 364(c)(1) or 503(b)(1) of the Bankruptcy Code. Further, the Debtor is unable to obtain more favorable secured credit from sources other than the Lender that would be allowable under sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code for the purposes set forth in this Final Order. After considering all alternatives, the Debtor has concluded, in the exercise of its prudent business judgment, that the DIP Loan Facility is in the best interests of the estate and its creditors.

F.  Lender has agreed to provide the requested DIP Loan (defined below) under the DIP Credit Agreement, and use of its cash collateral in accordance with the terms contained in this Final Order and in accordance with the DIP Credit Agreement (defined below), in the amounts, categories and times set forth in the Budget, which shall be used for (i) the necessary operation and maintenance costs associated with Debtor's oil and gas operations and (ii) other costs and expenses of administration of the Chapter 11 Case.

G.  Without the DIP Loan, the Debtor will be unable to pay its necessary operation and maintenance costs, pay joint interest billings, maintain employee obligations, pay lease expenses, and avoid irreparable harm to the Debtor's estate. At this time, the Debtor's ability to finance its

operations and the availability of sufficient liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations as provided herein are vital to the preservation of its revenues and maintenance of the value of the Debtor's estate.

H. Pursuant to this Final Order, the Debtor has requested the Lender to make DIP Loans in an aggregate amount not to exceed $1,250,000 (collectively, the "DIP Loan"), which funds shall be used by the Debtor solely to the extent provided in the Budget, to fund operations through August 11, 2017. The Debtor expressly acknowledges and agrees, and this Final Order provides, that if the Debtor is in default of its obligations under the DIP Loan Facility, there is no obligation by the Lender to continue funding upon expiration of the Final Order and, upon an Event of Default (as defined herein), the Lender may determine, in its sole and absolute discretion, to cease funding altogether.

I. The Lender has indicated its willingness to provide the DIP Loan, subject to the terms and conditions set forth herein, including, the provisions of this Final Order and the DIP Credit Agreement, providing that the Postpetition Liens (as defined herein) and the various claims, superpriority claims and other protections granted pursuant to this Final Order will receive the protections set forth in section 364(e) of the Bankruptcy Code.

J. The Lender's lending of the DIP Loans is conditioned upon (i) the grant of senior liens on all of the Debtor's unencumbered property and (ii) junior liens on any property of the Debtor's property subject to valid and perfected senior liens in existence as of the Petition Date. or that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b), and the Postpetition Liens will otherwise constitute a first priority lien in and on all other Postpetition Collateral (as defined herein), subject only to the Carve-Out (as defined herein) and Permitted Liens (as such term is defined in the DIP Credit Agreement). For the avoidance of

4

doubt, the term "Permitted Liens" shall include valid, properly perfected liens granted pursuant to any Joint Operating Agreements to which the Debtor is a party.

K. The terms of the DIP Loan have been negotiated in good faith and at arm's length between the Debtor and the Lender, and constitute the best financing available to the Debtor. The terms of the DIP Loan are fair and commercially reasonable under the circumstances, and are supported by reasonably equivalent value and fair consideration. As such, the funds advanced shall be deemed to have been extended by the Lender in "good faith" as that term is used in section 364(e) of the Bankruptcy Code and based upon the express reliance of the protections offered by section 364(e) of the Bankruptcy Code, the Postpetition Liens and the Superpriority Claim (defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, including in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

L. To the extent any portion of the foregoing constitute rulings of law, they shall constitute this Court's rulings with respect to the matters so-stated.

**NOW THEREFORE, THE COURT ORDERS AS FOLLOWS:**

**Motion Granted**

1. The Motion is hereby granted on an final basis in accordance with the terms and conditions set forth in this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservation of rights included therein, are hereby denied and overruled.

**The DIP Loan**

2. <u>DIP Loan</u>. Pursuant to sections 361 and 364 of the Bankruptcy Code and the terms and conditions hereof, until the occurrence of an Event of Default (as defined herein), the Debtor

5

is hereby authorized to borrow funds pursuant to the terms, conditions and provisions of this Final Order and under that certain Debtor in Possession Credit and Security Agreement, dated as of April 25, 2017 (the "<u>DIP Credit Agreement</u>" and together with the Final Order, the "<u>DIP Loan Facility</u>") in an aggregate amount of up to $1,250,000.00 based upon advances pursuant to the terms set forth herein and the DIP Credit Agreement (each individual advance defined as a "<u>DIP Loan</u>"; and collectively, the "<u>DIP Loans</u>"); provided, however, that the Debtor shall use the proceeds of the DIP Loans solely in compliance with the budget attached hereto as **Exhibit 1** and incorporated herein by reference (as it may be amended from time to time with the consent of the Lender and as provided herein, with all such amendments to be filed with the Court and served on the U.S. Trustee and counsel to any official committee of unsecured creditors appointed in this case not more than three business days after any amendment), and subject to the Variance (as defined herein) described in paragraph 13(i), the "<u>Budget</u>") and as expressly set forth herein. A true and accurate copy of the DIP Credit Agreement is attached hereto as **Exhibit 2**.

3.  <u>Payment of Principal, Interest, Fees, Etc</u>. The DIP Credit Agreement provides that the DIP Loans shall accrue interest at the rate of LIBOR plus 200 BPS per annum; provided however that upon an Event of Default, the DIP Loans shall accrue interest at the per annum interest rate equal to the sum of the interest rate otherwise applicable, plus 2.0% per annum. The DIP Credit Agreement provides that the principal, interest and other obligations owed with respect to the DIP Loans shall be due and payable upon the earlier of (a) 12 months after the Petition Date, (b) the closing on a sale of substantially all of the Debtor's assets, (c) the effective date of a chapter 11 plan of reorganization of the Debtor, and (d) the date that the DIP Loan is accelerated, whether at stated maturity, upon the occurrence of an Event of Default or otherwise (the "<u>Maturity Date</u>"). Lender shall be entitled to reimbursement of reasonable fees and expenses, including, without

limitation, attorneys' fees (the "Lender's Expenses"); provided, however, that copies of all invoices reflecting the Lender's Expenses shall be served by email on the Debtor, the U.S. Trustee, and counsel to the Committee (if any) (collectively the "Fee Notice Parties"), who shall have ten (10) business days to review and to assert any objections thereto; provided further, however, that such invoices may contain redactions, except that copies of invoices provided to the U.S. Trustee shall not be redacted, and the provision of such invoices (including the unredacted copies provided to the U.S. Trustee) shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. Unredacted copies of such invoices provided to the U.S. Trustee shall be subject to and protected under section 107(c)(3)(B) of the Bankruptcy Code. If no objection to the payment of the Lender Expenses is made in writing by the Fee Notice Parties within ten (10) calendar days after delivery of such invoices, then, without further order of, or application to, the Court or notice to any other party, such Lender Expenses shall be promptly paid by the Debtor. If an objection is made by any of the Fee Notice Parties within the ten-day objection period to the payment of the Lender Expenses, then the disputed portion of such Lender Expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtor..

4. <u>Conditions to the Final DIP Loan</u>. Pursuant to the DIP Credit Agreement, the funding of the DIP Loans hereunder is conditioned on the satisfaction of the following:

    (i)    closing on the DIP Credit Agreement; and

    (ii)    entry of this Final Order.

5. <u>Conditions to Each DIP Loan</u>. Pursuant to the DIP Credit Agreement, as a condition to funding each DIP Loan, the Debtor shall deliver to the Lender a certificate (the "<u>Borrowing Certificate</u>") in the form attached to the DIP Credit Agreement as **<u>Exhibit C</u>**,

certifying: (i) no Event of Default (as defined herein) has occurred or is continuing; (ii) the making of such DIP Loan shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily or permanently; (iii) this Final Order is in full force; (iv) all requirements under the DIP Loan Facility for a DIP Loan have been satisfied; and (v) the amount requested is consistent with the terms of the Budget.

6. <u>Disbursements of DIP Loans</u>. Subject to the conditions contained herein, the Lender agrees to make available DIP Loans, subject to DIP Credit Agreement, including the following advance mechanism:

(i) Each Borrowing Certificate shall be signed by the President of the Debtor that further certifies that:

- (a) such funds will be used for the proposed operating expenses of the Debtor as set forth in the Budget for the following week;

- (b) there are no funds on deposit in the Debtor's operating account available for such purpose and the total funds in the Debtor's operating account does not exceed $10,000;

- (c) such expenditures have not been subject to any prior requisition or payment or reimbursement from any other source; and

- (d) such amounts are anticipated to be expended in the week following the week in which the requisition was submitted and are consistent with the amounts and categories set forth in the Budget.

7. <u>Use of DIP Loan Proceeds</u>. The DIP Loans shall be used solely as set forth in the DIP Credit Agreement (including the Budget) and as otherwise provided in this Final Order for: (i) the necessary operation costs; and (ii) other costs and expenses of administration of the Chapter 11 Case as set forth in the Budget.

8. <u>Effectiveness of DIP Loans</u>. From and after the entry of this Final Order (the "<u>Effective Date</u>"), the terms and conditions hereof shall constitute a valid and binding obligation

of the Debtor, enforceable against the Debtor in accordance with the terms of this Final Order for all purposes during the Chapter 11 Case, any subsequently converted cases of the Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of the Chapter 11 Case.

**Security for the DIP Loan**

9. <u>Postpetition Liens</u>. Pursuant to section 364(c)(2) and (c)(3) of the Bankruptcy Code and as security for the repayment of the DIP Loans and any and all other obligations under or with respect to the DIP Loan Facility, subject to the Carve-Out, and Permitted Liens, the Lender is granted valid, binding, enforceable and perfected (i) first priority mortgages, pledges, liens and security interests in all currently owned or hereafter acquired property and assets of the Debtor of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, accounts, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks, deposit accounts, intercompany claims, claims against affiliates, causes of action, tax refund claims, commercial tort claims, insurance proceeds and insurance premium refunds, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing, the "<u>Postpetition Collateral</u>") that was not encumbered as of the Petition and (ii) junior liens in Postpetition Collateral subject to valid and perfected liens in existence as of the Petition Date, or that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b). For the avoidance of doubt, actions for preferences, fraudulent conveyances or other avoidance power claims and any recoveries under Bankruptcy Code sections 542, 544, 545, 547, 548 (exclusive of causes of action and transfers under section 549 which, for the avoidance of doubt,

shall serve as Postpetition Collateral), 550 and 553 (collectively, the "Avoidance Actions") and the proceeds thereof shall not be Postpetition Collateral.

10. The Postpetition Liens are in addition to the superpriority administrative expense claim set forth in Paragraph 12 hereof, and pursuant to sections 364(c), shall be valid, binding, continuing, enforceable, fully-perfected, senior and priming on all Postpetition Collateral that will constitute a first priority lien on all other assets of the Debtor, subject only to (i) Permitted Liens, if any, and (ii) the Carve-Out.

11. Superpriority Administrative Expense Claim. Subject to the Carve-Out, the DIP Loans shall have the status of a superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code, including, without limitation, having priority over all other unpaid administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code (subject only to Carve-Out), and shall at all times be senior to the rights of the Debtor, any successor trustee or any creditor in the Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment. The Superpriority Claim granted to the Lender by this Paragraph 12 shall be payable from and have recourse to all pre-and postpetition property of the Debtor and all proceeds thereof other than Avoidance Actions and the proceeds thereof.

12. Covenants. The Debtor shall observe all covenants in this Final Order at all times while DIP Loans remain outstanding. The Debtor agrees as follows (and the parties acknowledge

that failure to comply with such covenants shall constitute an Event of Default (as defined herein) under this Final Order:

**Budget Covenants:**

(i) The Debtor shall be in Compliance with the Budget. Compliance with the Budget ("Compliance") means a weekly report (the "Weekly Budget Report") certified by the President of the Debtor and in the same form as the Budget indicating all receipts received and disbursements made by the Debtor during the applicable measuring period compared to the Budget for such period (each, a "Measuring Period"), with (a) aggregate disbursements during such period not exceeding 110% of the total budgeted disbursement for such period; (b) any single disbursement line item not exceeding 115% of the such budgeted line item for such period; (c) total receipts not less than 90% of such budgeted receipts for such period, and (d) expenditures for estate professional fees shall not exceed 100% of the amount allocated for such expenditures in the Budget for such period (both in the aggregate and with respect to each professional's respective line on the Budget). Each "Variance" shall be measured on a rolling four week basis;

(ii) The Debtor shall provide the following reports to the Lender: no later than 5:00 p.m. (prevailing Central time) on Tuesday of each week (but no earlier than the seventh day after the date of this Final Order), the Weekly Budget Report, providing for a comparison of the items in the Budget for the preceding week to the Debtor's actual performance that includes (1) a narrative summary of any Variances from the Budget for the preceding week and on a cumulative basis, and (2) a detailed bank account and loan balance reconciliation and report summarizing, for the previous week, actual daily cash activity, including expenditures (i.e., checks issued and wire transfers sent) by line item as set forth in the Budget;

(iii) The Debtor agrees, and agrees to instruct its advisors, employees, managers and professionals, to reasonably cooperate with the Lender and its respective counsel, advisors, appraisers and professionals, with respect to the obligations owing under the DIP Loans and the Chapter 11 Case.

**Bankruptcy Milestones**

13. The Debtor agrees to pursue a sale of the Postpetition Collateral, and the Debtor acknowledges that failure to materially comply with the milestones set forth in the following milestone covenants (the "Bankruptcy Milestones") shall constitute an Event of Default (as defined herein)), unless any such conditions have been waived or modified by the Lender in its sole discretion:

**Sale Process:**

(i)     On or before June 21, 2017, the Debtor shall obtain entry of a bidding procedures order from the Bankruptcy Court approving bidding procedures for a sale of substantially all Debtor's assets.

(ii)    On or before July 21, 2017, Debtor shall identify a winning bidder or other purchaser for all or substantially all of Debtor's assets.

(iii)   On or before August 21, 2017, Debtor shall obtain Court approval of and close a sale of substantially all of the Debtor's assets.

14.    **No Liens or Encumbrances.** It shall be an event of default if, prior to payment in full of the DIP Loans, the Debtor sells, pledges, hypothecates, or otherwise encumbers any Postpetition Collateral. It shall also be an event of default for the Debtor to grant any other claim or expense having priority over, or being pari passu with, the priority granted to the Lender in this Final Order while any portion of the DIP Loans remain outstanding, except with respect to the Carve-Out and Permitted Liens.

15.    **No Waiver.** No consent by the Lender to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the Lender, as applicable, in the Postpetition Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtor, shall be implied from any action, inaction or acquiescence. Except as expressly set forth herein, the Effective Date is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of the Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Lender to (i) request adequate protection of their interests in the Postpetition Collateral or relief from or modification of the automatic stay under section 362 of the Bankruptcy Code (or the Debtor's right to object thereto); or (ii) request conversion of the Chapter 11 Case to one pursuant to chapter 7 of the Bankruptcy Code (or the

Debtor's right to object thereto); or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Lender.

16. <u>No Challenge</u>. Notwithstanding anything else herein, no amounts under the Carve-Out (as defined below), the proceeds of the DIP Loans and/or the proceeds of Postpetition Collateral shall be used for the purpose of: (i) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the (a) the DIP Loans or the Postpetition Collateral with respect thereto, or (b) any other rights or interests of the Lender, (ii) asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code against the Lender or invoking the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Postpetition Collateral or otherwise; (iii) preventing, hindering, or delaying the enforcement or realization by the Lender, as applicable, upon any of the Postpetition Collateral; (iv) incurring indebtedness except as permitted by this Final Order; (v) to fund acquisitions, capital expenditures, capital leases or other transactions not in the ordinary course of the Debtor's business other than as set forth in the Budget; (vi) commencing or prosecuting any motion, proceeding or cause of action against the Lender, or its agents, attorneys, advisors or representatives.

**Events of Default**

17. Each of the following is an Event of Default ("<u>Event of Default</u>") under the DIP Loan Facility:

(i) the failure to make payments of DIP Loans when due;

(ii) the failure of the Debtor to pay all of its administrative expenses in full in accordance with and subject to the terms as provided for in the Budget, including fees under 28 U.S.C. § 1930;

13

(iii) the Final Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Lender;

(iv) failure to meet any of the Bankruptcy Milestones set forth in this Final Order;

(v) the closing of a sale of all or substantially all of the Debtor's assets without the consent of the Lender;

(vi) the dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a chapter 7 case, or suspension of the Chapter 11 Case under section 305 of the Bankruptcy Code;

(vii) the appointment of a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in section 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code);

(viii) the granting of relief from the automatic stay to permit foreclosure with respect to a material asset of the Debtor, by any entity other than the Lender on any Postpetition Collateral;

(ix) the entry of an order granting any superpriority claim which is senior or pari passu with the Lender's claims under the DIP Loan Facility (other than (i) the Carve-Out);

(x) the payment of or granting adequate protection with respect to prepetition indebtedness of the Debtor other than as set forth in the Budget or as provided for in this Final Order;

(xi) the cessation of Postpetition Liens or Superpriority Claims with respect to the DIP Loan Facility or to the Lender as provided herein, being valid, perfected and enforceable in all respects;

(xii) the filing of any challenge by the Debtor (a) against the Lender, or its agents, attorneys, advisors or representatives, or (b) to or regarding the Postpetition Collateral;

(xiii) failure to pay the amounts due under the DIP Loan Facility by the Maturity Date; or

(xiv) the occurrence of an Event of Default under the DIP Credit Agreement.

Notwithstanding any provision above or in the DIP Credit Agreement to the contrary, the following shall not constitute an Event of Default: any proposal of a transaction that would result in the indefeasible payment in full at closing of the transaction, of all outstanding amounts under the DIP Loan Facility.

**Termination and Maturity**

18. Notwithstanding anything herein, and except as provided in Paragraph 20, the Debtor shall no longer, pursuant to this Final Order or otherwise, be authorized to borrow or utilize funds hereunder upon the earliest of (i) the occurrence of an Event of Default or (ii) the Maturity Date (such earlier date, the "Termination Date").

19. Notwithstanding the occurrence of an Event of Default, the Lender may elect in writing not to terminate the Debtor's authority to borrow or utilize funds hereunder, to waive defaults hereunder, to forbear from the exercise of rights and remedies hereunder and Court approval and the approval of the Lender, to modify the Maturity Date and any Event of Default. Any such continued extension of financial accommodations shall be without prejudice to the Lender's ability to terminate funding.

20. Notwithstanding the occurrence of an Event of Default or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to the Lender shall survive the Termination Date. Upon the Termination Date, the principal of and accrued interest and all other amounts owed to the Lender under the DIP Loans hereunder shall be immediately due and payable.

**Exercise of Rights**

21. (a) Any automatic stay otherwise applicable to the Lender is hereby modified so that, upon and after the occurrence of the Termination Date, the Lender shall, subject to subparagraph (b) of this paragraph 22, be immediately entitled to exercise all of its rights and remedies in respect of the Postpetition Collateral, in accordance with this Final Order and the DIP Credit Agreement.

(b) Notwithstanding the foregoing subparagraph (a) of this paragraph 22, immediately following the giving of notice by the Lender to the Debtor, counsel to the Debtor, the U.S. Trustee, and counsel to any official committee appointed in this chapter 11 case of the occurrence of an Event of Default: (i) all Commitments of the Lender to provide any extensions of credit shall immediately be suspended; (ii) the Debtor shall have no right to request or use any proceeds of any extensions of credit or to use Cash Collateral, other than towards the satisfaction of the obligations owing under this Final Order and the DIP Credit Agreement, and the Carve-Out, as provided in the applicable DIP Credit Agreement and this Final Order; (iii) upon the expiration of the five day notice period set forth in the sentence below, the Debtor shall deliver and cause the delivery of the proceeds of the extensions of credit and the Postpetition Collateral to the Lender as provided herein and in the DIP Credit Agreement; and (iv) the Lender shall be permitted to apply such proceeds in accordance with the terms of this Final Order and the DIP Credit Agreement. The Debtor or any other party in interest shall be entitled to an emergency hearing before this Court within five (5) days after the giving of written notice by the Lender of the occurrence of an Event of Default. If the Debtor or any other party in interest does not contest the occurrence of the Event of Default within such five (5) day period, or if there is a timely contest of the occurrence of an Event of Default and the Court after notice and a hearing declines to stay the enforcement thereof, the Termination Date shall be deemed to have occurred for all purposes and the automatic stay, as to the Lender, shall automatically terminate in all respects.

(c) The Lender shall be entitled to apply the payments or proceeds of the Postpetition Collateral as in accordance with the DIP Credit Agreement, subject only to the Permitted Liens and the Carve-Out, and in no event shall the Lender be subject to the equitable doctrine of

"marshalling" or any other similar doctrine with respect to any of the Postpetition Collateral or otherwise.

22.    Section 364(e); Section 506(c). The Lender shall be entitled to all of the benefits of section 364(e) of the Bankruptcy Code for all DIP Loans hereunder. Except to the extent of the Carve-Out, no expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Postpetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Lender and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender.

**Carve-Out**

23.    Notwithstanding anything to the contrary contained in this Final Order, the liens, claims and other protections granted to the Lender in this Final Order shall be subject to (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, which fees shall not be subject to or limited by any budget; (ii) subject to subparagraph 8(d) of the Final Order, all allowed and unpaid professionals fees, expenses and disbursements incurred prior to the Termination Date (whenever allowed) by (x) professionals of the estates retained by order of the Court ("Estate Professionals") up to the amount provided for such Estate Professionals in the Budget and (y) professionals of a Creditors Committee retained by order of the Court ("Creditors Committee Professionals" and, together with the Estate Professionals, the "Case Professionals"), if any, up to the amount provided for such Creditors Committee Professionals for such period in the Budget (this clause (ii) being referred to as the "Pre-Termination Date Carve-Out"); and (iii)

the allowed and unpaid professional fees, expenses and disbursements under section 327 or 1103(a) of the Bankruptcy Code incurred on or after the Termination Date, in the aggregate not to exceed $75,000 for Estate Professionals and $30,000 for Creditors Committee Professionals (this clause (iii) being referred to as the "Post-Termination Date Carve-Out")) (collectively, the "Carve-Out"); provided, however, nothing herein shall constitute a waiver of any right of the Lender to object to fees and expenses of professionals retained by the Debtor or any other Case Professionals.

**Miscellaneous**

24. The Debtor shall execute and deliver to the Lender as applicable, any and all such agreements, financing statements, instruments and other documents as such parties may reasonably request to evidence, confirm, validate or perfect the liens granted pursuant hereto. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents; provided, however, that the liens and security interests in favor of the Lender as provided herein are valid, binding, enforceable and perfected with the priorities set forth herein without any further action of such parties, including filing any financing statements, mortgages or other instruments.

25. No Discharge. To the extent obligations remain due and owing under the DIP Loans, such obligations of the Debtor in respect of the DIP Loans shall not be discharged by the entry of an order confirming a plan of reorganization or a plan of liquidation in these cases, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived such discharge with respect to the payment of the DIP Loans only.

26. Successors and Assigns. The provisions of this Final Order shall be binding upon and inure to the benefit of the Lender, the Debtor and its respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estates of the Debtor).

27.     **Modification of Stay.**  The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit (i) the Debtor to grant the Postpetition Liens to the Lender, as applicable, and (ii) the parties to take any action specifically authorized or contemplated by this Final Order.

28.     **Effectiveness.**  The findings of fact and conclusions of law contained in this Final Order shall take effect immediately upon the Effective Date.  The liens and claims granted to the Lender under this Final Order, and the priority thereof, and any payments made pursuant to this Final Order, shall be binding (subject to the terms of this Final Order) on the Debtor, any successor trustee or examiner, any Chapter 7 Trustee, and all creditors of the Debtor, as provided in section 364(e) of the Bankruptcy Code.

29.     To the extent there exists any conflict between the Motion, the DIP Credit Agreement, or any other document related to the DIP financing on the one hand, and this Final Order on the other, this Final Order shall govern and control.

30.     This Court Shall retain jurisdiction to implement and enforce the terms of this Final Order.

Dated: May 24, 2017

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE