IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ADAMS RESOURCES EXPLORATION CORPORATION,[1] | ) ) ) | Case No. 17-10866 (KG) |
| | ) ) | Objection deadline: July 24, 2017 at 4:00 p.m. Hearing Date: August 1, 2017 at 10:00 a.m. |
| Debtor. | ) | |

**MOTION OF THE DEBTOR, PURSUANT TO SECTION 1121(d)(1)
OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER
EXTENDING THE EXCLUSIVE PERIODS TO FILE A
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Adams Resources Exploration Corporation, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), submits this motion (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, extending the Debtor's exclusive periods to file a chapter 11 plan and solicit acceptances thereof. In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Pursuant to Del. Bankr. L.R. 9013–1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Adams Resources Exploration Corp. (9131). The location of the Debtor's corporate headquarters and service address is 17 S. Briar Hollow Lane, Suite 100, Houston, TX 77027.

4.  The statutory bases for the relief requested herein are Section 1121(d) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 9006, and Del. Bankr. L.R. 9006–2.

## BACKGROUND

### A.  Procedural Background

5.  On April 21, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case. The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of this bankruptcy case, is set forth in detail in the *Declaration of John Riney in Support of Chapter 11 Petition and First Day Pleadings* (the "Riney Declaration"), filed on April 21, 2017 [Docket No. 8] and fully incorporated herein by reference.

6.  The Debtor has continued in possession of its property and has continued to operate and maintain its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.  No creditors committee has been appointed or designated under section 1102(a) of the Bankruptcy Code.

### B.  First Day Motion and Retention

8.  The Debtor was consumed initially in this Chapter 11 Case with the filing and prosecution of first day motions including an employee wage and benefits motion, a cash management motion, a motion for authority to maintain prepetition insurance practices, a motion for authority to pay obligations necessary to maintain the value of the Debtor's oil and gas assets and a motion to approve DIP financing.

9. Shortly after the Petition Date, the Debtor filed applications seeking to retain Gavin/Solmonese LLC as its Chief Restructuring Officer, Oil & Gas Asset Clearinghouse, LLC as its broker for the sale of its oil and gas assets, and Sullivan Hazeltine Allinson LLC as its bankruptcy counsel. The Court entered orders authorizing the retention of these professionals in late May 2017. At the same time, the Court also entered orders approving the Debtor's retention of ordinary course professionals and interim compensation procedures. On June 20, 2017, the Court entered an order authorizing the Debtor to retain Locke Lord as special litigation counsel.

C. **Marketing and Sale Process**

10. Promptly after the Petition Date, the Debtor initiated a process for an orderly sale of its assets. The Debtor filed a sale procedures motion within two weeks of the Petition Date. Thereafter, the Debtor and its advisors have been focused on a number of matters necessary to ensure a robust marketing and sale process to maximize the value of the Debtor's assets. The Debtor, in consultation with its advisors, created a teaser that summarized its business, financial history, and industry. Shortly after the Court's entry of its *Order (a) Approving Sale Procedures in Connection with the Sale of Substantially All of the Debtor's Oil and Gas Assets, (b) Scheduling an Auction and Hearing to Approve the Transaction, and (c) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts* on May 24, 2017, the Debtor distributed these teasers to more than 5,000 parties who the Debtor believed may be interested in purchasing some or substantially all of the Debtor's assets. Nearly 100 parties have viewed the summary information regarding the Debtor's assets available in the virtual data room and 33 parties have signed confidentiality agreements and received access to the in-depth information available in the data room. The

Debtor and its advisors are continuing to make progress in the marketing and sales process. An auction is scheduled for July 19, 2017 in Houston, Texas and a hearing to consider the sale of the Debtor's assets is scheduled for August 1, 2017. The Debtor expects to close on the sale of substantially all of its assets in mid-August 2017.

**D.    The Bar Date Order and Claims Administration**

11.    On May 24, 2017, the Court entered the *Order (A) Establishing Bar Dates for Filing Proofs of Claim and (B) Approving Form, Manner, and Sufficiency of Notice Thereof* [Docket No. 73] (the "Bar Date Order"), which, among other things, established: (a) July 10, 2017, as the date by which creditors (other than governmental units) must file proofs of claim against the Debtor for pre-Petition Date claims and (b) October 23, 2017 as the date by which governmental units must file proofs of claim against the Debtor. In accordance with the Bar Date Order, the Debtor served a notice of the Bar Dates on known potential creditors and published a notice of the bar date in the *Oil & Gas Journal*.

12.    As of July 7, 2017, 32 claims had been filed against the Debtor in the Chapter 11 Case. The Debtor intends to begin the claim reconciliation process shortly after the closing on the sale of its assets.

**E.    Other Significant Progress**

13.    The Debtor has made other significant progress in this Chapter 11 Case. On May 22, 2017, the Debtor filed its schedules and statement of financial affairs and filed amended schedules and an amended statement of financial affairs on June 19, 2017. In connection with the expected sale of the Debtor's assets, the Debtor and its advisors have reviewed the Debtors various agreements and compiled a list of executory contracts and unexpired leases that may be assumed and assigned to a purchaser.

14. The Debtor has also negotiated a favorable agreed order resolving a motion filed by Texas Brine Company, LLC ("TBC") seeking to pursue direct actions against the Debtor's insurers in litigation pending in Louisiana. Pursuant to that agreed order [Docket No. 130], upon confirmation of a chapter 11 plan in this case, TBC waives the right to any distribution on its claims asserted against the Debtor in connection with that litigation. This could negate the need for the Debtor to defend significant litigation, and increase recoveries for the Debtor's other creditors.

15. In addition, the Debtor has, among other things, responded to various creditor inquiries and handled the various other tasks related to the administration of the Debtor's bankruptcy estate and the Chapter 11 Case. These labor-intensive tasks—coupled with the work of managing the Debtor's business—have fully occupied the Debtor's management and advisors.

## RELIEF REQUESTED

16. By this Motion, the Debtor requests that the Court enter the Proposed Order extending the periods in which the Debtor has the exclusive right to: (a) file a chapter 11 plan (the "Exclusive Filing Period") by 90 days, through and including November 17, 2017 and (b) solicit acceptances of a chapter 11 plan (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") by 90 days, through and including January 16, 2018. Without the requested extensions, the Exclusive Filing Period and Exclusive Solicitation Period would expire on August 19, 2017 and October 18, 2017, respectively.

**BASIS FOR RELIEF**

A.  **Legal Standard for Extending the Exclusive Periods**

17.  Section 1121(b) of the Bankruptcy Code provides debtors with the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case. *See* 11 U.S.C. § 1121(b). A debtor that files a plan within the initial 120-day exclusive period has until 180 days after the commencement of the chapter 11 case to solicit and obtain acceptances of such plan. *See* 11 U.S.C. § 1121(c)(3). Section 1121(d)(1) of the Bankruptcy Code permits a bankruptcy court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof upon a demonstration of "cause." *See* 11 U.S.C. § 1121(d)(1). These extensions are capped by section 1121(d)(2) of the Bankruptcy Code, which limits any extension of the exclusive filing period to 18 months after the petition date and any extension of the solicitation period to 20 months after the petition date. *See* 11 U.S.C. § 1121(d)(2).

18.  The exclusive periods under section 1121 of the Bankruptcy Code are intended "'to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'" *In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344).

19.  Courts within the Third Circuit and in other jurisdictions have held that the decision to extend a debtor's exclusive periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See, e.g., First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr.

S.D.N.Y. 1987). Although the Bankruptcy Code does not define "cause," legislative history indicates that "cause" should be viewed flexibly "to allow the debtor to reach an agreement." H.R. Rep. No. 95-595 at 231, 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191. At its base, a debtor should be given a reasonable opportunity to negotiate with creditors and prepare adequate information concerning the ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

20. Indeed, courts have found that Congress did not intend that the 120-day and 180-day periods be treated as a hard and fast rule. *See In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [section 1121(d)] is flexibility"). Rather, Congress intended that the exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate, and draft a viable chapter 11 plan, which, by definition, is one that is supported by some or all of a debtor's key constituents, without the disruption to its business that would occur with the filing of competing plans. *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate [a] plan unimpaired by competition . . . is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business.").

21. Courts consider a variety of factors in determining whether "cause" exists to extend a debtor's exclusive periods, including:

(a) the size and complexity of the case;

(b) the existence of good-faith progress toward reorganization;

(c) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    (d)    the sufficiency of the time before the exclusivity periods end for the debtor to negotiate a chapter 11 plan and prepare adequate information;

    (e)    whether the debtor is paying its debts as they become due;

    (f)    the length of time a case has been pending;

    (g)    whether creditors will be prejudiced by an extension;

    (h)    whether the debtor is seeking the extension to pressure creditors;

    (i)    whether creditors are prejudiced by the extension; and

    (j)    whether unresolved contingencies exist.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 64–65 (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

    22.    Not all of these factors are relevant in every case, and a finding that any one of these factors exists may justify extending a debtor's exclusive periods. *See Express One Int'l*, 194 B.R. at 100 (four factors relevant in determining whether cause exists to extend exclusivity); *In re Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (four factors analyzed in ruling that bondholders' committee failed to show cause to terminate debtors' exclusivity).

**B.    Cause Exists to Extend the Exclusive Periods in the Chapter 11 Case**

    23.    The facts and circumstances here establish that "cause" exists to extend the Exclusive Periods pursuant to section 1121(d)(1) of the Bankruptcy Code because virtually all of the forgoing factors are relevant and demonstrate more than sufficient cause exists to enter an order granting an extension of the Exclusive Periods in the Chapter 11 Case.

(i) **The Debtor Has Made Substantial Good Faith Progress Toward a Value-Maximizing Conclusion to the Chapter 11 Case**

24. The Debtor has been operating under the protections of chapter 11 for less than three months. During this time, the Debtor's management and advisors have made significant progress in ensuring a smooth transition into chapter 11 and preserving and maximizing the value of the Debtor's estate for the benefit of all stakeholders.

25. As set forth in herein, the Debtor has taken significant steps in the marketing and sale process. With the entry of the Bar Date Order and the impending Bar Dates, the Debtor will soon have a more refined understanding of the relevant claims pool.

26. All of these developments set the stage for further progress in the marketing and sale process without unnecessary distractions. The Debtor's current progress towards resolving the issues facing its estate—including the marketing and sale process—justify the requested extension of the Exclusive Periods.

(ii) **The Debtor Has Demonstrated Reasonable Prospects for Proposing a Consensual Restructuring**

27. The marketing and sale process and the resolution of the TBC motion show that the Debtor is making progress towards a consensual restructuring.

(iii) **There Is Insufficient Time Remaining Before the Current End of the Exclusive Periods for the Debtor to Complete the Sale Process and Negotiate a Restructuring Proposal**

28. It is simply not feasible for the Debtor, before expiration of the Exclusive Periods, to complete the marketing and sale process as well as formulate a chapter 11 plan to distribute proceeds therefrom. The requested extension of the Exclusive Periods will therefore allow the Debtor to pursue each of these objectives and arrive at an appropriate exit from chapter 11 without the value-destructive distraction that would result from any party in

interest proposing its own chapter 11 plan at this juncture. The Debtor expects to be in a position to file a plan and disclosure statement not long after the closing on the sale of its assets.

### (iv) The Debtor Is Paying Their Bills as They Become Due

29. In the ordinary course of its business, the Debtor has been paying its undisputed post-petition bills as they become due. Moreover, the Debtor has funds availability to continue to meet its post-petition obligations as they come due. Thus, the requested extension of the Exclusive Periods will not jeopardize the rights of creditors and other parties.

### (v) The Chapter 11 Case Is Less Than Four Months Old

30. This is the Debtor's first request for an extension of the Exclusive Periods. As discussed herein, the Debtor has accomplished a great deal since commencing the Chapter 11 Case. But there is still more to do, including completing the marketing and sale process and negotiating a restructuring proposal.

### (vi) Extending the Exclusive Periods Will Not Prejudice Creditors

31. The Debtor is requesting an extension of the Exclusive Periods to afford it time to pursue the marketing and sale process and to negotiate and document a consensual restructuring proposal between the Lender and other parties in interest. This extension will not prejudice the Debtor's creditors. To the contrary, the extension is intended to allow the Debtor to work cooperatively with its other stakeholders toward completing a restructuring proposal that is supported by key creditor constituencies.

### (vii) The Debtor Is Not Seeking an Extension of the Exclusive Periods to Pressure Creditors

32. The Debtor's request to extend the Exclusive Periods is not intended to maintain leverage over a group of creditors whose interests are being harmed by the

Chapter 11 Case. Rather, and as described herein, the extension is intended to enable the Debtor to complete the marketing and sale of its assets reach a consensual restructuring proposal. The Debtor has worked to resolve critical issues in the Chapter 11 Case for the ultimate benefit of its creditors as a whole and is pursuing the marketing and sale process as a significant step towards a consensual restructuring.

### (viii) Extending the Exclusive Periods Is Necessary to Resolve Certain Contingencies

33. The requested extension of the Exclusive Periods is also appropriate because of critical unresolved contingencies in the Chapter 11 Case, the most significant of which is the marketing and sale process. At this stage, an order approving a sale of the Debtor's assets has not been entered and recoveries for creditors under a restructuring proposal cannot be determined.

34. Based on the foregoing, the Debtor respectfully submits that cause exists, pursuant to section 1121(d) of the Bankruptcy Code, for the Court to extend the Exclusive Filing Period through and including November 17, 2017, and the Exclusive Solicitation Period through and including January 16, 2018.

### RESERVATION OF RIGHTS

35. The Debtor reserves the right to supplement this Motion and request that any relief granted be without prejudice to the Debtor's ability to seek further extension or modification of the Exclusive Periods or to seek other appropriate relief.

### NOTICE

36. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtor's twenty largest creditors; and (iii) counsel to Adams Resources & Energy Inc., and (iv) all parties that have requested special

notice pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Debtor respectfully requests entry an order substantially in the form of the Proposed Order (i) extending the Exclusive Filing Period through and including November 17, 2017, (ii) extending the Exclusive Solicitation Period through and including January 16, 2018 and (iii) granting such other and further relief as the Court may deem just and appropriate.

Date:  July 10, 2017
       Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

/s/ William A. Hazeltine

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
901 North Market Street, Suite 1300
Wilmington, DE  19801
Tel: (302) 428-8191
Fax: (302) 428-8195

*Attorneys for Debtor and Debtor in Possession*