## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ADAMS RESOURCES EXPLORATION | ) Case No. 17-10866 (KG) |
| CORPORATION,[1] | ) |
| | ) **Objection deadline: Sept. 13, 2017 at 4:00 p.m.** |
| Debtor. | ) **Hearing Date: Sept. 20, 2017 at 10:00 a.m.** |
| | ) |

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS CLAIMS ENCUMBRANCES AND OTHER INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTACTS AND UNEXPIRED LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF

Adams Resources Exploration Corporation ("AREC" or the "Debtor"), by and through undersigned counsel, hereby moves this Honorable Court, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Del. Bankr. L. R. 6004-1(c) for entry of an order, substantially in form attached hereto as **Exhibit A** (the "Proposed Order"), (a) approving the sale of certain of the Debtor's assets to Petrodome Napoleonville, LLC ("Petrodome" or the "Purchaser") free and clear of liens, claims, encumbrances and other interests, (b) approving an asset purchase agreement between AREC and Petrodome (the "APA") substantially in the form attached to the Proposed Order as **Exhibit 1**, (c) authorizing the assumption and assignment of the Joint Operating Agreement, as amended (the "JOA") with Petrodome Operating, LLC ("PDO")  (PetroPro")), an affiliate of Petrodome, to which the Acquired Assets are subject, and (d) granting certain related relief.  In support of this Motion, the Debtor respectfully represents as follows:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of Debtor's federal tax identification number, is Adams Resources Exploration Corp. (9131).   The location of the Debtor's corporate headquarters and service address is: 17 S. Briar Hollow Lane, Suite 100, Houston, TX 77027.

**HIGHLIGHTED PROVISIONS REQUIRED BY DEL. BANKR. L.R. 6004-1**

Del. Bankr. L.R. 6004-1 requires that motions requesting the approval of the sale of assets outside the ordinary course of business highlight certain material terms contained in the asset purchase agreement and proposed sale order. Such material terms are highlighted below:

- The sale to Petrodome will be a private sale not subject to competing bids.

- The APA allows either party to terminate the APA if the Closing shall not have occurred on or before 15 days after the Approval Order becomes a Final Order; *provided, however,* that the right to terminate the APA shall not be available to a Party if such Party has failed to perform in all material respects its obligations under the APA and such failure is the cause of, or results in, the failure of the Closing to occur. APA §§ Section 8.1(e).

- The Sale Order provides that Petrodome will be granted the protections afforded by Bankruptcy Code ¶ 363(m). Sale Order, ¶¶ 16 – 18.

- The Sale Order provides that Petrodome will not be subject to claims based on successor liability. Sale Order, ¶¶ 14 and 15.

- Following the closing of the sale transaction, the Debtor will have reasonable access to books and records acquired by Petrodome for purposes of administering their estates. APA, § 6.6(b).

- The Sale Order provides that the 14-day stay imposed by Sections 6004(h) and 6006 (d) shall not apply not apply to the Sale Order. Sale Order, ¶ 26.

**JURISDICTION**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor confirms its consent pursuant to Del. Bankr. L. R. 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006 9007 and 9014 and Del Bankr. L. R. 6004-1.

## BACKGROUND

4.      On April 21, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code commencing the above-captioned case. The Debtor is operating as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.  To date, no official committee has been formed.

5.      As additional background and support for this Motion, the Debtor refers the Court to the *Declaration of John Riney in Support of Chapter 11 Petition First Day Motions* [Docket No. 8], which was filed on the Petition Date.

**The Debtor's Marketing and Sale Process**

6.      As a result of the downturn in the oil and gas exploration and production industry and the loss of key personnel, the Debtor filed its bankruptcy petition because it determined that the sale of its oil and gas assets pursuant to Section 363 would be in the best interest of its creditors.  On May 23, 2017, the Court entered an order approving the Debtor's retention of Oil & Gas Asset Clearinghouse, LLC ("OGAC") as the Debtor's broker to market the Debtor's oil and gas assets *nunc pro tunc* to May 3, 2017 [Docket No. 60].  On May 24, 2017, the Court entered an order approving procedures for the marketing and sale of the Debtor's assets [Docket No. 71].  Both prior to and after the entry of the Sale Procedures Order, the Debtor, led by OGAC, conducted an extensive campaign to market and sell its oil and gas assets.

7.      Specifically, at the sale hearing held on August 1, 2017 (the "Sale Hearing"),

Deon Warner, OGAC's president, testified by proffer that:

- Prior to the approval of the sale procedures, OGAC received information on the Debtor's wells and other oil and gas interests from the debtor and constructed a virtual data room for the assets being sold.

- On May 23, 2017, OGAC sent a blast e-mail out to alert parties operating in the oil and gas industry that the Debtor's oil and gas interests were being offered for sale.

- On May 24, 2017. OGAC opened its virtual data room and it remained open through the bid deadline of July 12, 2017 and through subsequent extended deadlines.

- A total of ninety-five entities contacted OGAC, reviewed preliminary information about the assets for sale, and provided OGAC with their contact information for follow up.

- Of these entities that made initial contact, thirty-two signed confidentiality agreements and reviewed the information available in the virtual data room, which included historical production and financial data.

- Seven of these entities indicated they intended to make offers.

- Two entities actually made offers by the initial bid deadline, as extended.  For the other five who indicated they intended to make an offer, numerous conversations were held to encourage an offer and to work through any issue that might be preventing an offer. Ultimately these parties either changed their mind or subsequently failed to respond to further inquiries, even as the bid deadlines were extended.

8.      Based on these marketing efforts, Mr. Warner testified that he was satisfied that

the scope of parties notified of the assets and sale process was extensive, adequate time was

offered to the participating entities to make a bid, and adequate information was provided to

enable parties to make a bid.

9.      The Debtor conducted an auction in Houston Texas on July 19, 2017.  The offers

submitted by the two bidders—Sequitur Permian, LLC ("Sequitur") and Bendel Ventures LP 1

("Bendel")—were on different subsets of the Debtor's assets.  At the conclusion of the auction,

the Debtor accepted both bids as the highest and best offers for the assets subject to those bids.

10.     A significant portion of the Debtor's oil and gas assets were not subject to either bid but both Sequitur and Bendel expressed an interest in submitting bids on most of these remaining assets.  Accordingly, at the July 19 auction, the Debtor set a subsequent deadline for parties to submit bids on these assets and stated that it would conduct a telephonic auction for these assets if it received competing bids.  In addition, after the July 19 auction, OGAC contacted the parties that had previously expressed an interest in the Debtor's assets to advise them that the Debtor had set another deadline to submit bids on the remaining assets.

11.     Both Sequitur and Bendel submitted bids on two batches of the remaining assets and, accordingly, the Debtor conducted a telephonic auction on July 27, 2017 for these assets.  At the conclusion of this subsequent auction, the Debtor selected both bids submitted by Bendel as the highest and best offers for the assets subject to those bids.

12.     The Court held the Sale Hearing on August 1, 2017 and approved the sales to both Sequitur and Bendel subject to the execution of asset purchase agreements.  On August 11, 2017, the Court entered an order approving the Sequitur sale [Docket No. 167] and the sale to Sequitur closed that day.  The Debtor expects to submit an order approving the Bendel Sale to the Court this week or early next week and the sale should close shortly after entry of the order.

13.     The Debtor has a few remaining interests (less than 10) in oil and gas wells not subject to the sales to Sequitur or Bendel.  Regarding further marketing of these remaining assets, Mr. Warner testified that OGAC does not believe that another scheduled auction would be beneficial to AREC given the extensive marketing prior to the Sale Hearing.

14.     Similarly, John Riney, the Debtor's president, testified by proffer at the Sale Hearing that the remaining assets had been significantly marketed and it would be inefficient and expensive to enter into another sale process to sell these assets similar to the process that

resulted in the bids from Sequitur and Bendel.  Mr. Riney further testified that he believes it
would be in the best interests of the Debtor and its estate to permit the Debtor to enter into
private sale transactions with respect to the remaining assets.

15.     PDO is the operator, and Petrodome is a working interest owner, of two wells in
Assumption Parish, LA—the Hensarling #1 oil/gas well and the Templet #1 salt water disposal
well.  Petrodome expressed interest in acquiring AREC's oil and gas interests related to these
wells (the "Acquired Assets") prior to the bid deadline but did not submit a bid because it
thought that these assets would be acquired as part of a package with AREC's interests in other
wells.  On August 9, 2017, Petrodome offered to purchase the Acquired Assets for $165,725.82.
On August 18, 2017, AREC submitted a counteroffer of $195,000 and Petrodome countered
with an offer of $180,365.  AREC, after consultation with its largest creditor, Adams Resources
& Energy, Inc. ("AREI"), determined in the exercise of its business judgment that it was in the
best interests of the Debtor's estate and its creditors to accept the Petrodome offer.  AREC and
Petrodome expect to execute the APA in the near future.

## RELIEF REQUESTED

16.     The Debtor, in its business judgment and the exercise of its fiduciary duty,
requests that this Court enter the Proposed Order approving the APA and authorizing the sale of
the Acquired Assets to Petrodome in a private sale free and clear of all liens, claims and
encumbrances, including any successor liability claims.

## BASIS FOR RELIEF REQUESTED

### A.     The Sale is Within the Sound Business Judgment of the Debtor and Should be Approved

17.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor-
in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary

course of business, property of the estate." 11 U.S.C. § 363(b)(1).   Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.   However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the Debtor. *See e.g. Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

18.    The "sound business judgment" test requires a debtor to establish four elements to justify the sale or lease of property outside the ordinary course of business: (i) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business; (ii) that adequate and reasonable notice has been provided to interested persons; (iii) that the debtor has obtained a fair and reasonable price; and (iv) that the sale is proposed in good faith. *Id.*; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

### 1. There is a Sound Business Purpose for the Proposed Sale

19.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at

hand"); *In re Integrated Res.*, 147 B.R, 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the … [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

20.    Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision, the officers and directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, the transaction in question should be approved under section 363(b)(1). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Pitt v. First Wellington Canyon Assoc. (In re First Wellington Canyon Assocs.)*, 1989 WL 106838 at *3, Kocoras, J. (N.D. Ill. Sept. 8, 1989) ("Under this test, the debtor's business judgment … must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

21.    The Debtor's sale of the Acquired Assets to Petrodome satisfies the "sound business reason test." The Debtor entered bankruptcy because it determined, in its business judgment, that the sale of its oil and gas assets through a Section 363 sale would be in the best interest of its creditors. The Debtor, through OGAC, has thoroughly marketed its assets, which will result in the sale of substantially all of the Debtor's oil and gas assets to Sequitur and

Bendel. The Debtor has determined that it is in the best interests of its estate and its creditors to continue the process of divesting itself of its remaining oil and gas interests.

## 2.  **Adequate and Reasonable Notice of the Sale**

22.      The Debtor has provided adequate and reasonable notice to interested parties of the sale of the Acquired Assets.  As discussed above, the Debtor conducted an extensive marketing process for all of its assets, including the Acquired Assets, prior to the initial bid deadline. OGAC initiated the process by sending a blast email to alert parties operating in the oil and gas industry that the Debtor's oil and gas interests were being offered for sale.  Moreover, OGAC contacted parties that had expressed an interest in the Debtor's oil and gas assets after the July 19 auction to let them know that the Debtor had set a deadline to submit bids on the assets not subject to the Sequitur and Bendel bids accepted at the July 19 auction.  Moreover, the Debtor will provide notice of this Motion in accordance with Fed. R. Bankr. P. 2002 and the applicable Local Rules.  Accordingly, the proposed Sale satisfies the second prong of the sound business judgment test.

## 3.  **The Purchase Price for the Acquired Assets is Fair and Reasonable.**

23.      The Acquired Assets have been extensively marketed in accordance with the Sale Procedures Order and the Sale Procedures and, in the Debtor's business judgment, additional marketing is not necessary and is not likely to result in a higher or better bid for the Acquired Assets.  Moreover, because Petrodome is an affiliate of the operator of the wells, it is not likely than any other party will offer more to purchase the Acquired Assets.  Accordingly, the Debtor is confident that the Purchase Price for the Acquired Assets is fair and reasonable, thus satisfying the third prong of the sound business judgment test.

4. **The Sale is Proposed in Good Faith Under Section 363(m) of the Bankruptcy Code**

24.     Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b)…of this section of a sale…of property does not affect the validity of a sale…under such authorization to an entity that purchased…such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale… were stayed pending appeal.

11 U.S.C. § 363(m).

25.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to Section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

26.     As required by Section 363(m) of the Bankruptcy Code, the sale of the Acquired Assets has been proposed in good faith.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing Section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'."  *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).  To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  *Id.*; *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings."  In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

27.     Here, the sale of the Acquired Assets has been proposed in good faith.  To the best of the Debtor's knowledge, Petrodome is not an insider of the Debtor and is purchasing the

10

Acquired Assets in good faith. Petrodome understood that the Debtor was free to deal with any other party interested in acquiring the Acquired Assets. All payments to be made by Petrodome and other agreements or arrangements entered into by Petrodome in connection with the sale of the Acquired Assets have been or will be disclosed. The sale of the Acquired Assets and the APA have been negotiated at arm's length and in good faith. Under the circumstances, Petrodome should be afforded the protections that Section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

28.    Furthermore, neither the Debtor nor Petrodome has engaged in collusion or any other conduct that would cause or permit the sale of the Acquired Assets to Petrodome to be avoided under Section 363(n) of the Bankruptcy Code.

29.    Based on the foregoing, the Debtor requests that the Court make a finding following the Sale Hearing that (i) the sale of the Acquired Assets is a proper exercise of the Debtor's business judgment, (ii) the sale of the Acquired Assets is in good faith, thus providing Petrodome with the protections of Section 363(m) of the Bankruptcy Code and (iii) that no party engaged in conduct that would cause or permit the sale of the Acquired Assets to Petrodome to be avoided under Section 363(n) of the Bankruptcy Code.

**B.    The Sale Satisfies the Requirements
of Section 363(f) of the Bankruptcy Code**

30.    The Debtor respectfully submits that it is appropriate to sell the Acquired Assets free and clear of all interests, pursuant to Section 363(f) of the Bankruptcy Code, with all such interests attaching to the net sale proceeds of the Acquired Assets to the extent applicable. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

    a.  applicable nonbankruptcy law permits sale of such property free and clear of such interests;

11

b.  such entity consents;

c.  such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

d.  such interest is in bona fide dispute; or

e.  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

31.    Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five conditions will suffice to permit the sale of the Acquired Assets free and clear of the interests.  *See, e.g., In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive and holding that the court may approve the sale 'free and clear' provided at least one of the subsections of section 363(f) is met).

32.    The Debtor will establish at the Sale Hearing that one or more of the tests under section 363(f) will be satisfied with respect to the transfer of the Acquired Assets pursuant to a Sale Order.

C.    **The Could Should Approve the Sale of the Acquired Assets Free and Clear of Successor Liability**

33.    Under the terms of the APA, Petrodome will assume and agree to pay, perform and discharge as and when they become due and payable, or will be required to perform, all liabilities which will be performed on and after the Effective Time (as defined in the APA). Petrodome should not be liable for any of the Debtor's liabilities in connection with the sale of the Acquired Assets as a successor to the Debtor's business or otherwise, unless expressly assumed.  Extensive case law exists providing that claims against a purchaser are directed to the

proceeds of a free and clear sale of property and may not be asserted against a buyer subsequently.

34.    Courts have held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability resulting from pre-existing claims. *See In re: Trans World Airlines, Inc.*, 322 F.3d 283, 292-93 (3d Cir. 2003) (affirming order of bankruptcy court authorizing sale of substantially all of the debtors' assets free and clear of employment discrimination claims); *In re Ormet Corp.*, 2014 WL 3542133 at *3, Walrath, J. (Bankr. D. Del. July 17, 2014) (approving sale of substantially all of the debtors' assets free and clear of successor liability claim of pension trust).

35.    The purpose of an order authorizing the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against the purchaser arising from the debtor's pre-sale conduct. Rather, under section 363(f) of the Bankruptcy Code, Petrodome is entitled to know that the Acquired Assets are not infected with latent claims that may be asserted against Petrodome after the proposed transaction is completed.

36.    Accordingly, the Debtor requests that the Order approving the sale of the Acquired Assets provide that Petrodome will not be liable as a successor under any theory of successor liability for claims that encumber or relate to the Acquired Assets, including, without limitation, any claims arising under a theory of successor liability.

D.    **Assumption and Assignment of the JOA**

37.    Section 365(a) and (b) of the Bankruptcy Code authorize a debtor-in-possession to assume executory contracts or unexpired leases subject to the court's approval, and requires a debtor-in-possession to satisfy certain requirements at the time of assumption. Under section

365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing in relevant part that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--

>> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default …;

>> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, or any actual pecuniary loss to such party resulting from such default; and

>> (C) provides adequate assurance of future performances under such contract or lease.

11 U.S.C. § 365(b)(1).

38.     The standard that is applied by the Third Circuit in determining whether a debtor should be authorized to assume an executory contract or unexpired lease is the debtor's "business judgment" that the assumption is in its economic best interests. *See Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3rd Cir. 1989). *See also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing the business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113); *In re III Enterprises, Inc. V*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) (citations omitted), *aff'd*, 169 B.R. 551 (E.D. Pa. 1994).

39.     It is well established that a court should approve a debtor's motion to assume or reject an executory contract if the debtor's decision is based on its "business judgment." *See In re Decora Industries, Inc.*, 2002 WL 32332749 at *8, Farnan, J. (D. Del. May 20, 2002); *Official Comm. for Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.)*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is

the business judgment rule"); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard"), *vacated on other grounds*, 607 F.3d 957 (3d Cir. 2010).

40.     To determine if the business judgment test is met, a court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. at 239 ("This is not a difficult standard to satisfy and requires only a showing that rejection will benefit the estate.") Specifically, a court should find that the assumption or rejection is elected on "an informed basis, in good faith, and with the honest belief that the assumption … [is] in the best interest of [the debtor] and the estate." *In re Network Access Solutions Corp.*, 330 B.R. at 75. Under this standard, a court should approve a debtor's business decision unless that decision is the product of bad faith or a gross abuse of discretion. *See Computer Sales Int'l, Inc. v. Federal Mogul (In re Federal Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003); *Lubrizol Enters. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985).

41.     Here, the Debtor's assumption and assignment of the JOA to Petrodome meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code.  The sale to Petrodome will provide significant benefits to the Debtor's estate and Petrodome requires the assumption and assignment of the JOA as part of the sale transaction. Moreover, upon closing of the of the Sale, the Debtor will have no further use for the JOA. Accordingly, the assumption and assignment of the Assigned Contracts is a sound exercise of the Debtor's business judgment.

42.     PDO (i) consents to the assumption and assignment of the JOA to Petrodome, (ii) acknowledges that Petrodome has provided adequate assurance of future performance of its

obligation under the JOA, and (iii) agrees that no amounts must be paid to PDO to cure any defaults by AREC under the JOA.

### E.    Relief Under Bankruptcy Rules 6004(h) is Appropriate

43.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."    Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease … is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Debtor requests that any order approving the APA and the assumption and assignment of the Assigned Contracts be effective immediately by providing that the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d) are waived.  The Debtor requests that any order approving the APA be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) is waived.

44.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, the leading treatise on bankruptcy suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."   10 *Collier on Bankruptcy* ¶ 6004.10 (15th rev. ed. 2006).  Furthermore, Collier suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

45.     To maximize the value received for the Acquired Assets, the Debtor seeks to close the sale as soon as possible after the Sale Hearing.  Accordingly, the Debtor hereby requests that the Court waive the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d) or, in the alternative, if an objection to the sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## NOTICE

46.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Attorneys General in the states where any of the Acquired Assets are located (v) the Debtor's twenty largest unsecured creditors and/or their counsel; (vi) counsel to AREI; (vii) the United States Environmental Protection Agency; (viii) state environmental agencies in the jurisdictions where any of the Acquired Assets are located; (ix) PDO; (x) the Securities Exchange Commission; and (xi) all Persons known or reasonably believed to have asserted a lien or encumbrance on any of the Acquired Assets; and (xi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that this Honorable Court enter an order, substantially in the form attached hereto as Exhibit A, (i) approving the APA; (ii) authorizing the Sale of the Acquired Assets free and clear of all liens, claims and encumbrances, including successor liability claims; and (iii) granting such other and further relief as is just and proper.

Date:   August 30, 2017
        Wilmington, DE

SULLIVAN • HAZELTINE • ALLINSON LLC


William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
901 North Market Street, Suite 1300
Wilmington, DE  19801
Tel: (302) 428-8191
Fax: (302) 428-8195
whazeltine@sha-llc.com

*Attorneys for Debtor and Debtor-in-Possession*